## MICHIGAN PUBLIC UTILITIES COMMISSION ET AL. *v.* DUKE, DOING BUSINESS AS DUKE CARTAGE COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

No. 283.   Argued November 21, 1924.—Decided January 12, 1925.

1. A state law imposing upon all persons engaged in transportation for hire by motor vehicle over the public highways of the State the burdens and duties of common carriers, and requiring them to furnish indemnity bonds to secure payment of claims and liabilities resulting from injury to property carried, when applied to a private carrier without special franchise or power of eminent domain and engaged exclusively in hauling from a place within the State to a place in another State the goods of particular factories under standing contracts with their owners, violates the Commerce Clause, by taking from the carrier use of instruments by means of which he carries on interstate commerce, and by imposing on him

---

[4] See the discussion of *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194, by Thomas Reed Powell, 32 Harv. Law Rev. 251, 261–2.

unreasonable conditions precedent to his right to continue to carry on interstate commerce.   P. 576.

2. To convert property used exclusively in the business of a private carrier into a public utility, or to make the owner a public carrier, by legislative fiat, is beyond the power of a State, since it would be taking property for public use without just compensation, in violation of the Due Process Clause of the Fourteenth Amendment.   P. 577.

Affirmed.

APPEAL from a decree of the District Court granting an interlocutory injunction.   See 294 Fed. 703.

*Mr. H. E. Spalding,* with whom *Mr. Andrew B. Dougherty,* Attorney General of the State of Michigan, *Mr. O. L. Smith* and *Mr. William L. Carpenter* were on the briefs, for appellants.

I. The Fourteenth Amendment is not violated by requiring all those using public highways in motor vehicle transportation for hire, including those who have previously done that business under private contract, to become common carriers.

A common carrier is not required to carry goods that he has not facilities to handle, or for which he has not space, nor is he required to carry goods of a class that he does not hold himself out to carry.   He must, however, carry for all who offer, indifferently.   This is the distinguishing characteristic of his business.

Highways are established for the use and convenience of the public.   Their regulation and control is in the legislature or in those subordinate bodies, administrative or municipal, to which it has delegated the power of regulation.   The legislature may impose any regulation or limitation upon the use of highways that might conceivably promote the public interest—anything not clearly arbitrary, anything that may facilitate traffic or make it safe, lessen the wear or prevent the destruction of the road bed, or relieve the public burden of construc-

tion and maintenance—is within legislative competence. It may limit the speed and weight of vehicles. It may prescribe types of vehicular construction. It may exclude traffic of certain kinds, or condition the use of highways in such traffic upon the payment of certain fees. See *Scovel* v. *Detroit,* 146 Mich. 93; *Commonwealth* v. *Kingsbury,* 199 Mass. 542; *Dobson* v. *Mascall,* 199 N. Y. Supp. 800; *People* v. *Rosenheimer,* 209 N. Y. 115; *Northern Pac. Ry. Co.* v. *Schoenfeldt,* 123 Wash. 579; *Hadfield* v. *Lundin,* 98 Wash. 657; *Ex parte Dickey,* 76 W. Va. 576; *Jersey City Gas Co.* v. *Dewight,* 29 N. J. Eq. 242; *Packard* v. *Banton,* 264 U. S. 140.

The principle that those who use the public highways as a place of business for private gain are exercising a privilege and not a right is as applicable to private as it is to public carriers.

To the same end, the protection of the public interest, the legislature may therefore require those who use the public highways in their private business of transportation for hire, to carry for the public at large as well as under private contract, and to be subject to regulation and control as common carriers.

The legislature cannot subject private property to public use without compensation, but may condition the use of public property—a public facility—in the transaction of a private business in such a manner as to insure the convenience and accommodation of the public.

It is therefore competent for the legislature to require those who at the passage of the Act are engaged or thereafter engage in motor vehicle transportation for hire on the public highways to do that business as common carriers. That is, without precluding them from carrying out such special contracts as they have made, it may compel them, if they continue in the business, to become common carriers and submit to the regulations which the Act imposes on such carriers. *Pipe Line Cases,* 234

U. S. 548. *Producers Transp. Co.* v. *Railroad Comm.,* 251 U. S. 228; *Louis. & Nash. R. R. Co.* v. *West Coast Naval Stores Co.,* 198 U. S. 483; *Northern Pac. Ry. Co.* v. *North Dakota,* 236 U. S. 585, distinguished.

The lengths to which the regulation of business which does not involve the use of public property or service to the general public may be constitutionally carried is shown by the following: *Brass* v. *Stoeser,* 153 U. S. 391; *German Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389; *Rast* v. *Van Deman & Lewis Co.,* 240 U. S. 342; *Block* v. *Hirsh,* 256 U. S. 135; *Marcus Brown Co.* v. *Feldman,* 256 U. S. 170.

II. The provisions of § 3 of the Act are within its title.

III. The remaining provision of § 3 subjecting carriers under the Act to all laws of the state regulating transportation by other common carriers so far as applicable is not invalid for indefiniteness.

IV. A State may require all carriers over its highways, including those engaged in interstate transportation, to protect their patrons by insurance or bond against injuries sustained in carriage upon the highways of the State. *Nashville, etc., Ry. Co.* v. *Alabama,* 128 U. S. 96; *Western Union Tel. Co.* v. *James,* 162 U. S. 650; *Chicago, etc., Ry. Co.* v. *Solan,* 169 U. S. 133.

*Mr. Hal H. Smith* and *Mr. Percy J. Donovan,* for appellee, submitted.

Mr. Justice Butler delivered the opinion of the Court.

This is an appeal under § 266, Judicial Code, from an order granting an interlocutory injunction restraining appellants from enforcing against appellee, plaintiff below, Act No. 209, Public Acts of 1923 of Michigan. The act provides that no person shall engage or continue

in the business of transporting persons or property by motor vehicle for hire upon the public highways of the State over fixed routes or between fixed termini, unless he shall have obtained from the Michigan Public Utilities Commission a permit so to do. The permit shall be issued in accordance with the public convenience and necessity, and may be withheld when it appears that the applicant is not able to furnish adequate, safe or convenient service to the public. §§ 1, 2. Section 3 provides that, "Any and all persons . . . engaged . . . in the transportation of persons or property for hire by motor vehicle, upon or over the public highways of this state . . . shall be common carriers, and, so far as applicable, all laws of this state now in force or hereafter enacted, regulating . . . transportation . . . by other common carriers, including regulation of rates, shall apply with equal force and effect to such common carriers . . . by motor vehicle . . ." Section 7 provides that, "Any and all common carriers under this act shall carry insurance for the protection of the . . . property carried by them in such amount as shall be ordered by said commission . . . or shall furnish an indemnity bond . . . conditioned upon the payment of all just claims and liabilities resulting from injury to . . . property carried by such carrier, and in a company authorized to do business in this state, in an amount to be fixed and approved by said commission." A rule adopted by the commission requires all common carriers, defined by the act, to take out such an indemnity bond; and the commission has announced that no permit will be given until there has been filed with it a certificate of the bonding company showing that such bond had been issued. The act imposes upon every such carrier a fee for the privilege of engaging in the business defined in § 1, and appropriates all fees to the general highway fund. And it prescribes punishment

by fine or ' imprisonment or both for violations of the act or of any lawful order, rule or regulation of the commission.

At the time of the passage of the act, plaintiff had three contracts to transport from Detroit, Michigan, to Toledo, Ohio, automobile bodies made at the plants of three manufacturers in Detroit and intended for the use of an automobile manufacturer at Toledo. He had been doing such hauling for some years, and had a large investment in property used exclusively for that purpose. He employed 75 men and operated 47 motor trucks and trailers upon the public highways of Michigan, which formed a part of the route between Detroit and Toledo. He had no other business and did not hold himself out as a carrier for the public. It was shown that defendants intended to enforce the act against him, and that, unless he obtained the permits required, they would cause his vehicles to be stopped on the highways by state police and local officers, and the prescribed penalties to be imposed upon him. Plaintiff alleged that the enforcement of the act would cause him irreparable injury, the loss of his contracts, the destruction of his business, and the loss of a substantial part of his capital investment. He assailed the act as invalid; and, among other things, averred that it contravenes the commerce clause of the Constitution of the United States; that it is repugnant to the due process clause of the Fourteenth Amendment, and that it violates the Constitution of Michigan, because it contains a plurality of objects, and its real object is not expressed in the title. The lower court held that § 7, providing for indemnity bonds imposes a direct burden on interstate commerce, and that the provisions of § 3 applicable to private carriers are foreign to the title of the act and fall under the condemnation of the state constitution. See opinion of the same judges in *Liberty*

*Highway Co.* v. *Michigan Public Utilities Commission,* 294 Fed. 703, 706, 708, decided the same day that the injunction was granted in this case.

Plaintiff is a private carrier. His sole business is interstate commerce, and it is limited to the transportation covered by his three contracts. He has no power of eminent domain or franchise under the State, and no greater right to use the highways than any other member of the body public. He does not undertake to carry for the public and does not devote his property to any public use. He has done nothing to give rise to a duty to carry for others. The public is not dependent on him or the use of his property for service, and has no right to call on him for transportation. The act leaves it to the commission to require plaintiff, if he is to use the highways, to be prepared to furnish adequate service to the public. It would make him a common carrier and subject him to all the duties and burdens of that calling and would require him to furnish bond for the protection of those for whom he hauls.

This Court has held that, in the absence of national legislation covering the subject, a State may rightfully prescribe uniform regulations necessary for public safety and order in respect to the operation upon its highways of all motor vehicles—those moving in interstate commerce as well as others; that a reasonable, graduated license fee imposed by a State on motor vehicles used in interstate commerce does not constitute a direct burden on interstate commerce, and that a State, which, at its own expense, furnishes special facilities for the use of those engaged in intrastate and interstate commerce may exact compensation therefor, and if the charges are reasonable and uniform, they constitute no burden on interstate commerce. *Hendrick* v. *Maryland,* 235 U. S. 610, 622; *Kane* v. *New Jersey,* 242 U. S. 160, 167. Such regulations are deemed to be reasonable and to affect

interstate commerce only incidentally and indirectly. But it is well settled that a State has no power to fetter the right to carry on interstate commerce within its borders by the imposition of conditions or regulations which are unnecessary and pass beyond the bounds of what is reasonable and suitable for the proper exercise of its powers in the field that belongs to it. *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197, 201. One bound to furnish transportation to the public as a common carrier must serve all, up to the capacity of his facilities, without discrimination and for reasonable pay. The act would put on plaintiff the duty to use his trucks and other equipment as a common carrier in Michigan, and would prevent him from using them exclusively to perform his contracts. This is to take from him use of instrumentalities by means of which he carries on the interstate commerce in which he is engaged as a private carrier and so directly to burden and interfere with it. See *Kansas City Southern Ry. Co.* v. *Kaw Valley District,* 233 U. S. 75, 78, 79; *Atlantic Coast Line R. R. Co.* v. *Wharton,* 207 U. S. 328, 334; *Illinois Central R. R. Co.* v. *Illinois,* 163 U. S. 142, 153. And it is a burden upon interstate commerce to impose on plaintiff the onerous duties and strict liability of common carrier, and the obligation of furnishing such indemnity bond to cover the automobile bodies hauled under his contracts as conditions precedent to his right to continue to carry them in interstate commerce. See *Adams Express Co.* v. *New York,* 232 U. S. 14, 33. Clearly, these requirements have no relation to public safety or order in the use of motor vehicles upon the highways, or to the collection of compensation for the use of the highways. The police power does not extend so far. It must be held that, if applied to plaintiff and his business, the act would violate the commerce clause of the Constitution.

Moreover, it is beyond the power of the State by legislative fiat to convert property used exclusively in the

business of a private carrier into a public utility, or to make the owner a public carrier, for that would be taking private property for public use without just compensation, which no State can do consistently with the due process of law clause of the Fourteenth Amendment. *Producers Transportation Co.* v. *Railroad Commission*, 251 U. S. 228, 230; *Wolff Co.* v. *Industrial Court*, 262 U. S. 522, 535. On the facts above referred to, it is clear that, if enforced against him, the act would deprive plaintiff of his property in violation of that clause of the Constitution.

The Supreme Court of Michigan has not decided whether the act contravenes the state constitution; and as we hold that the enforcement of the act against plaintiff would deprive him of his rights under the Federal Constitution, and that therefore the decree must be affirmed, we do not pass on state questions. *Pacific Tel. Co.* v. *Kuykendall*, 265 U. S. 196, 204.

*Decree affirmed.*