## JOHNSON TRANSFER & FREIGHT LINES et al. v. PERRY et al.

No. 598.

District Court, N. D. Georgia, Atlanta Division.

Jan. 24, 1931.

Underwood, Haas & Gambrell, of Atlanta, Ga., for plaintiffs.

S. J. Smith, Jr., of Commerce, Ga., for defendants.

Before FOSTER, Circuit Judge, and BORAH and SIBLEY, District Judges.

SIBLEY, District Judge.

The state of Georgia is building and improving a state-wide system of highways. Acts Ga. of 1921, p. 199. The Motor Carriers Act of 1929, and the tax upon motor carriers imposed the same year (Acts Ga. 1929, p. 293; Acts Ga. 1929, p. 74), are parts of this plan. The Motor Carriers Act was before this court in the case of Southern Motorways Incorporated v. Perry et al., 39 F. (2d) 145. The separate legislative classification of those who make the use of the public streets and highways their business was there justified, and the act upheld in many of its features. The present case is supplementary to that. It involves motor carriers engaged wholly in interstate commerce between fixed termini, and over roads constructed under the Federal Highway Acts (23 USCA § 1 et seq.). No substantial issue of fact exists. The petition and answer make practically an agreed statement of facts.

The summarized facts are: One, complainant Self, is a private carrier, resident in Alabama; the other, Johnson Lines, is a common carrier, resident in Tennessee. Both operate freight trucks regularly between Birmingham, Ala., and Chattanooga, Tenn., only. The sole available paved road passes for twenty-three miles through Georgia over a highway built or rebuilt with federal aid, under the act of Congress (23 USCA § 1 et seq.). Neither carrier accepts or delivers freight in Georgia. Each sought to apply to the Georgia Public Service Commission for a certificate of public convenience and necessity, and for annual licenses for their trucks, as required by the Georgia statute, tendering the requisite fees for these. The commission would not entertain the applications unless made on its printed form, which contains an agreement by the applicant to observe all the requirements of the Georgia statute and of the regulations established by the commission thereunder, nor unless the applicant would give a bond as required by the Georgia act (Acts Ga. 1921, p. 297, § 5), "to secure the owner against loss or damage to freight," and make a deposit of $75 to secure payment of a tax of ¾ cents per mile traveled, as imposed by the Georgia Tax Act of 1929. The commission conceded that it had no power to fix the rates of carriage of the applicants, and each applicant offered to give a bond to answer for negligent injuries as required by the act, but refused to give the bond for the benefit of its patrons, or to sign the promise demanded, or to make the tax deposit. Certificates were refused for this reason. The commission then prosecuted the drivers of the trucks for operating without certificates and licenses under provision of the Georgia statute. Injunction is sought against the enforcement of the statute on the grounds that, as applied to complainants on these facts, it violates the commerce clause of the Federal Constitution, and that the law laying the tax based on mileage violates the commerce clause, and the equal protection clause of the Fourteenth Amendment, and also a paragraph of the State Constitution (article 3, § 7, par. 8) involving the title of the act, and section 9 of the Federal Highway Act of 1921 (23 USCA § 9), which prohibits tolls of any kind being charged on the roads built or rebuilt by federal aid.

From the great mass of decisions respecting commerce done by railroad and express companies and pipe lines, these pertinent principles may be drawn: Direct regulation of interstate carriage as such, including regulation of the persons carrying and their vehicles, is vested in the federal government. A general police power and a general taxing power is reserved to the state government, and these may usually be exercised without excepting persons and instrumentalities engaged in interstate commerce, provided there is no discrimination against interstate commerce, and provided no direct and unreasonable burden is put upon it. The mere privilege of engaging in interstate commerce is not derived from the state, and can-

not be conditioned by a state upon procuring a license or paying a tax. Regulations of commerce by Congress, including those of persons carrying it on, and the instrumentalities used in it, although they may fall in the field of ordinary police power, such as laws regulating employers' liability, hours of service of employees, safety appliances on equipment, and the like, will override the police regulations of the state when in conflict with them, because of the supremacy of the Federal Constitution and laws, and although in the absence of congressional legislation such state regulation would stand. But railroads, express companies, and pipe lines have used only their own transportation facilities. In the present revolutionized traffic by motor vehicles over paved roads, the expensively improved highway belonging to the public is used. The right of the state furnishing it to select the traffic to be done over it, and to protect not only the public in its use but the highway itself, and to obtain compensation for this use, and contribution for its upkeep, is undoubted, and this right of necessity very greatly extends the control by the state over commerce of all sorts upon it, and the taxes and other charges which it may make against all users, whether engaged in intrastate or interstate commerce. See Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222, which did not involve the business of carriage; and Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596, and Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 48 S. Ct. 230, 72 L. Ed. 551, which did involve such business. The older cases concerning carriers in interstate commerce cannot be applied without careful consideration of this new element. For illustration, the state of Georgia could not require a license nor a tax of a railroad carrier for the mere privilege of carrying interstate freight over the company's own tracks in Georgia, but it certainly could if that carrier wished to use the tracks built and owned by the state from Atlanta to Chattanooga. So the state may license or refuse to license, may condition or charge for, the use of its improved roads, when they are turned from their common uses and purposes to the carrier's business. Schlesinger v. City of Atlanta, 161 Ga. 148, 129 S. E. 861; Packard v. Banton, 264 U. S. at page 144, 44 S. Ct. 257, 68 L. Ed. 596. The interstate carrier has no better right than any other to use the state's improved highway without its consent, or without paying for it.

We accordingly think that the certificate of public convenience and necessity, with a reasonable fee therefor, and an annual license fee for the trucks, are legally demandable as a nondiscriminatory prerequisite of the use of the highway for carrier purposes, even though the commerce involved is wholly interstate. Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199.

No question of arbitrary or discriminatory refusal is here involved. The commission, indeed, offers to issue the certificates, but it is contended that the offer is unlawfully conditioned, entitling complainants to dispense with them. When refusal of the privilege of using the highway is based solely on an applicant's refusal to yield on an unconstitutional requirement made of him, it has been held that he may ignore the certificate and license required, although a general refusal might have been lawful. Michigan Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Frost & Frost Trucking Co. v. Commission, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457. The requirement of the Georgia act that a bond be given to protect the owner of the freight transported, in addition to one to answer to the public for negligent injuries, is unconstitutional as applied to these complainants. They offer to give the latter bond for the safety and protection of the public of Georgia. The state of Georgia has no call to meddle with their patrons in Alabama and Tennessee. The bond for their protection touches only their contracts of carriage, and to require it is clearly a direct regulation of interstate commerce, having no relation to the safety or convenience of the Georgia public, or to the use of the roads. Compare Sprout v. South Bend, 277 U. S. 164, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45. So the exaction of a promise to obey all the requirements of the Georgia statutes and the regulations of the commission as a condition of issuing the certificate and license is unconstitutional. Besides the matter just discussed, others of the requirements cannot be constitutionally imposed on an interstate carrier, and a promise to submit to them cannot be demanded. The act seems to require a private carrier to become subject to the regulations and obligations of a common carrier, which could not be required of the complainant Self. Michigan Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105.

We think on the other hand that the deposit of $75 to secure the tax of ¾ cents per mile is demandable. The Tax Act of 1929, p. 74, requires the collection "from every auto transportation company, association, or individual, as defined hereinafter, to which has been granted a certificate of public convenience and necessity, which it or they are hereby required to obtain from the Public Service Commission of this State, permitting him, it, or them to engage in the transportation of passengers or freight, or both, between fixed termini, an occupation tax on a mileage basis of (omitting parts of the schedule not applicable to complainants) ¾ cent per mile on all trucks with a loaded capacity of less than 5,500 pounds, * * * coming within the terms of this Act, for every mile traveled by the motor vehicles of such auto transportation company, association, or individual, over the public highways of this State." The tax is to be settled quarterly, but $75 is to be put up at the time of issuance of the certificate. The persons to whom certificates are to be granted, and of whom they are required, are defined by the Motor Carriers Act, Acts of 1929, at page 295 (section 2), and are those who own, control, or operate motor-propelled vehicles used in the business of transporting persons or property for hire over the public highways of the state, excluding streets of towns and cities, and with other exceptions not here material. The tax is laid only on such carriers as operate between fixed termini. That as an administrative precaution the commission requires the $75 to be paid before the certificate issues is not important. It is a mere deposit. It is easier and safer to return the deposit, if no certificate is issued, than to cancel the certificate for failure after issuance to make the deposit. The contention that the act is void under the provisions of the State Constitution (article 3, § 7, par. 8) that no act shall contain matter different from that stated in its title because the title authorizes only taxation, while the act also regulates by requiring a certificate to be obtained, is also without merit. The certificate was validly required by the Motor Carriers Act of the same date. The only practical effect of the Tax Act was to levy the tax, a thing fully covered by its title. There could have been no legislative surprise or confusion about it. Nor is the language, "truck with a loaded capacity of 5,500 pounds," without meaning so as to make the tax nonoperative. It means "load capacity" excluding the weight of the truck itself. The equal protection clause of the Fourteenth Amendment is not violated by confining the tax to motor carriers having fixed termini. It may or may not be true that the vagrant carriers get as much benefit from, and do as much damage to, the road on the whole, as the constant user of a particular route, but the business of the latter is apt to be more extensive, more regular, and more profitable, and their tax is more readily checked and collected. The difference is like that between a storekeeper and a peddler, or between a railroad and a dray line. We cannot say the classification is arbitrary.

Whether the commerce clause is violated raises a harder question. As an occupation tax on doing interstate carriage, it would fall, except that it is not for the mere privilege of doing a carriage business, but for doing it on the public highway, where such business cannot be done as a matter of absolute right, either in interstate or intrastate commerce. The tax is not a flat rate on all users of the road, as was the case in Sprout v. South Bend, 277 U. S. 164, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45, but is scaled according to the size of vehicles and actual use of the road. Despite this being called an occupation tax, it is in substance a tax to compensate for the use of the road. It is in addition to the truck license charge. While the fees for the certificate are appropriated to the expense of executing the Motor Vehicle Act by its own provisions, and the license tax is so used in practice, this mileage tax is a general fund. The occupation tax on sellers of gasoline of 6 cents per gallon sold, without regard to the use made of the gasoline, Acts 1929, p. 99, is partly allocated by law to build and maintain roads, and is sufficient therefor. But this also is a general fund, not bound to be applied specially as though it were an inspection fee and justifiable only as such. If the mileage tax can be justified only as a charge for using the road, it need not in consequence be spent upon the roads if the state substitutes other general funds many times greater. It is no concern of the taxpayer which money the state spends on the roads, if his tax in kind and amount is justified. Nor can he complain that he pays two or more taxes if each is for a justified purpose and the aggregate exceeds no constitutional limit. Interstate Busses v. Blodgett, supra. Since complainants make no stop in Georgia, it is not likely that they buy any gasoline, and thus contribute indirectly to the upkeep of the roads through the tax on its sale. The mileage tax is not shown to be actually burdensome to interstate commerce.

For aught we know it is well worth to the owner the 17¼ cents charged for his truck to travel the twenty-three miles in Georgia over a paved highway instead of an unpaved dirt road. The tax in its substance is nearer that sustained as to interstate carriers in Interstate Busses v. Blodgett, 276 U. S. 245, 48 S. Ct. 230, 72 L. Ed. 551, and Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199, than that condemned in Sprout v. South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45.

There remains the question whether the tax being imposed on account of and fixed by the use of the road is contrary to section 9 of the Federal Highway Act of 1921, which forbids, on federal-aid roads, "tolls of any kind." Assuming the constitutionality of this prohibition, what is meant by "tolls"? In the past, when a road was paved or a bridge built, it was usual to erect gates, and collect from each vehicle or person passing a charge for passage, which went to the owner of the franchise. These clearly were tolls, and intended to be abolished as a nuisance to travel. But, since the entire cost of maintaining the federal-aid roads was put upon the states, it can hardly be thought Congress intended to exclude all taxation for that purpose which has any reference to the use of the road, or is measured by the extent of the use. Especially would this be doubted when the taxation is on the business of carriage, which is not an ordinary, but an extraordinary, use of the road. Considering the great damage done by freight trucks continually using the same road, and the great benefit to the carrier thus provided with a track which he does not have to maintain, or pay property taxes on, it is just that such carrier should, in proportion to his use of the road, contribute to the public treasury which maintains it. If carriers, both interstate and intrastate, cannot be made so to contribute, the federal-aid roads will soon be appropriated by them. In Carley & Hamilton v. Snook, 281 U. S. 73, 50 S. Ct. 204, 207, 74 L. Ed. 704, 68 A. L. R. 194, a toll was defined as a "proprietor's charge for the passage over a highway or bridge, exacted when and as the privilege of passage is exercised." The fees there involved were held to be the "demands of sovereignty and not of proprietorship," and were taxes rather than tolls. Following this strict construction of the word "tolls," we hold this a tax and valid.

By section 22 of the Motor Carriers Act (Acts Ga. 1929, p. 302), each section is independent and to be enforced, though others are ineffective. It follows that complainants are justified in operating without certificates and truck license only so long as these are withheld on account of their refusal to give the bond and make the agreement which we have held to be not demandable of them. Accordingly we will grant the interlocutory injunction sought, but with leave to the defendants to apply for a dissolution of it should these unlawful demands be withdrawn by them.