### UNITED STATES v. SCOTT et al.
### No. 1084.

District Court, W. D. Washington, N. D.
Feb. 11, 1935.

J. Charles Dennis, U. S. Atty., and John Ambler, Asst. U. S. Atty., both of Seattle, Wash.

Mifflin & Mifflin and Wettrick, Wettrick & Flood, all of Seattle, Wash., and Frank H. Hilton, of Portland, Or., for defendants.

CUSHMAN, District Judge (after stating the facts as above).

The demurrer on the first, second, and fifth grounds will be overruled.

There is no occasion to separately consider the two remaining grounds.

Section 1 of the National Industrial Recovery Act of June 16, 1933 (title 15, U. S. C., § 701 [15 USCA § 701]) provides:

"§ 701. *Declaration of Policy* "A national emergency productive of widespread unemployment and disorganization of industry, which burdens interstate and foreign commerce, affects the public welfare, and undermines the standards of living of the American people, is hereby declared to exist. It is hereby declared to be the policy of Congress to remove obstructions to the

free flow of interstate and foreign commerce which tend to diminish the amount thereof; and to provide for the general welfare by promoting the organization of industry for the purpose of cooperative action among trade groups, to induce and maintain united action of labor and management under adequate governmental sanctions and supervision, to eliminate unfair competitive practices, to promote the fullest possible utilization of the present productive capacity of industries, to avoid undue restriction of production (except as may be temporarily required), to increase the consumption of industrial and agricultural products by increasing purchasing power, to reduce and relieve unemployment, to improve standards of labor, and otherwise to rehabilitate industry and to conserve natural resources."

Section 702 (a) makes provision for the establishment of administrative agencies.

Section 702 (b) provides for the delegation of his powers by the President.

Section 702 (c) provides for the duration of this law.

Section 702a authorized the President to appoint boards to investigate controversies arising under section 707 (a) or which are burdening or obstructing the free flow of interstate commerce.

Sections 702b, 702c, 702d, 702e, and 702f contain provisions subordinate to 702a.

Section 703 (a), (b), (c), and (d) provides:

"§ 703.   Codes of Fair Competition

"(a) Approval by President; conditions, restrictions and exemptions; monopolistic practices forbidden

"Upon the application to the President by one or more trade or industrial associations or groups, the President may approve a code or codes of fair competition for the trade or industry or subdivision thereof, represented by the applicant or applicants, if the President finds (1) that such associations or groups impose no inequitable restrictions on admission to membership therein and are truly representative of such trades or industries or subdivisions thereof, and (2) that such code or codes are not designed to promote monopolies or to eliminate or oppress small enterprises and will not operate to discriminate against them, and will tend to effectuate the policy of this title: Provided, That such code or codes shall not permit monopolies or monopolistic practices:   Provided   further,

That where such code or codes affect the services and welfare of persons engaged in other steps of the economic process, nothing in this section shall deprive such persons of the right to be heard prior to approval by the President of such code or codes.   The President may, as a condition of his approval of any such code, impose such conditions (including requirements for the making of reports and the keeping of accounts) for the protection of consumers, competitors, employees, and others, and in furtherance of the public interest, and may provide such exceptions to and exemptions from the provisions of such code, as the President in his discretion deems necessary to effectuate the policy herein declared.

"(b) Approval of code as establishing standards of fair competition; violation as unfair competition;   powers of Federal Trade Commission unimpaired.

"After the President shall have approved any such code, the provisions of such code shall be the standards of fair competition for such trade or industry or subdivision thereof.   Any violation of such standards in any transaction in or affecting interstate or foreign commerce shall be deemed an unfair method of competition in commerce within the meaning of chapter 2 of this title; but nothing in this chapter shall be construed to impair the powers of the Federal Trade Commission under such chapter 2.

"(c) Jurisdiction of district courts; duties of district attorneys.

"The several district courts of the United States are hereby invested with jurisdiction to prevent and restrain violations of any code of fair competition approved under this chapter; and it shall be the duty of the several district attorneys of the United States, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations.

"(d) Mandatory Codes; Hearings

"Upon his own motion, or if complaint is made to the President that abuses inimical to the public interest and contrary to the policy herein declared are prevalent in any trade or industry or subdivision thereof, and if no code of fair competition therefor has theretofore been approved by the President, the President, after such public notice and hearing as he shall specify, may prescribe and approve a code of fair competition for such trade or industry or subdivision thereof, which shall have the same

effect as a code of fair competition approved by the President under subsection (a) of this section."

Section 703 (e) relates to the limitation and restriction of imports by the President.

Section 703 (f) prescribes the punishment for violations of a code in any transaction affecting interstate or foreign commerce.

Section 704 relates to agreements and licenses to make effective codes of fair competition with respect to transactions affecting interstate commerce.

Section 705 relates to exemptions of code provisions from anti-trust laws.

Section 706 relates to reports to the President by trade and individual groups and the making of rules by the President and investigations by the Federal Trade Commission.

Section 707 (a) provides that codes of fair competition shall contain certain provisions regarding the rights of employees.

Section 707 (b) relates to agreements between employers and employees.

Section 707 (c) provides that the President may prescribe a limited code where there is no agreement between employers and employees.

Section 707 (d) relates to the definition of words and terms used in the act.

Section 708 relates to the Agricultural Adjustment Act.

Section 709 relates to regulation of oil operations.

Section 710 provides that the President prescribe rules necessary to carry out the purposes of the act.

Section 711 contains a separability clause.

And section 712 gives a short title for the act.

The Executive Order of October 31, 1933 (No. 6373), touching the Code of Fair Competition for the Motorbus Industry is as follows:

"Executive Order

"Code of Fair Competition for the Motor Bus Industry

"An Application having been duly made, pursuant to and in full compliance with the provisions of title I of the National Industrial Recovery Act, approved June 16, 1933, for my approval of a Code of Fair Competition for the Motor Bus Industry, and hear-ings having been held thereon, and the Administrator having rendered his report containing an analysis of the said code of fair competition, together with his recommendation and findings with respect thereto, and the Administrator having found such a said code of fair competition complies in all respects with the pertinent provisions of title I of said act, and that the requirements of clauses (1) and (2) of subsection (a) of section 3 of said act have been met.

"Now, therefore, I, Franklin D. Roosevelt, President of the United States, pursuant to the authority vested in me by title I of the National Industrial Recovery Act, approved June 16, 1933, and otherwise, do adopt the findings and approve the report and recommendations of the Administrator and do order that the said code of fair competition be and it is hereby approved.

"Franklin D. Roosevelt.

"The White House, October 31, 1933.

"Approval recommended:

"Hugh S. Johnson, Administrator."

The report and findings, approved and adopted by the President in the foregoing order, are as follows:

"October 5, 1933.

"The President, The White House.

"Sir: This is a report of the hearing on the Code of Fair Competition for the Motor Bus Industry of the United States, conducted in Washington on the 30th day of August 1933, in accordance with the provisions of the National Industrial Recovery Act.

"Provisions of this Code as to Wages and Hours

"Maximum hours for employees are established as follows: Clerical employees— 40 hours per week averaged over a period of 4 weeks. Garage, service, and maintenance employees—48 hours per week averaged over a period of 6 weeks with a maximum of 54 hours in any one week. Bus operators and ticket agents—48 hours per week averaged over a period of 6 weeks with a maximum of 54 hours in any one week provided that during any 3-month period a maximum of 54 hours is established. Watchmen and janitors, 56 hours in any one week. No employee working over 35 hours per week may be employed for more than 24 days in any 28-day period.

"Minimum wage rates are established ranging from $15.00 per week in any city of over 500,000 population to $12.00 per week in towns of less than 2,500 population.

Provision is made that rates of pay for employees whose hours of employment have been reduced by the provisions of this Code shall be increased by an equitable readjustment and that rates of pay for employees whose hours have not been so reduced shall not be decreased below those in effect for the week ending June 17, 1933.

"Employment of any person under 16 years of age and of any person as a bus driver under 21 years of age is prohibited.

"In recommending the approval of the hour provisions of this Code it has been necessary to recognize that passenger motor carrier transportation is a continuous public service requiring twenty-four hours per day operation seven days per week with flow of traffic reaching periodical peaks each day, week, and season in the year. Its schedules are continuously subject to interference by reason of road, weather, traffic, and other emergency conditions. Moreover, it is competitive with steam rail passenger transportation not operating under the provisions of the National Industrial Recovery Act.

"To adopt a schedule of less hours at this time would undoubtedly result in a great hardship to the Industry. As a step toward the realization of a shorter hour week, the Industry is required under the Code to study ways and means of still further improving working conditions and to present the results of its study to the Administrator by May 1, 1934.

"Economic Effect of Code

"Under the recommended Code, the Motor Bus Industry will reemploy 12,586 additional wage earners or about 18 per cent according to an estimate made by the Division of Economic Research and Planning. This will increase the annual pay roll of the Industry by $15,152,000 or about 18 per cent.

"The Motor Bus Industry has suffered not only from the depression but also from its disadvantageous competitive position with other passenger carriers. The taxes of its principal competitor, the railroad, have increased but 25 per cent since 1919 as contrasted with a 500 per cent increase in the case of the Motor Bus Industry. The annual tax per bus was $859 in 1932, an increase of $523 per bus since 1925.

"In view of these considerations it is believed that if this Industry is to share impartially in business recovery, the provisions of this Code are all that can be reasonably expected at this time.

"Findings

"The Administrator finds that:

"(a) The Code as recommended complies in all respects with the pertinent provisions of Title I of the Act, including, without limitation, subsection (a) of Section 7, and subsection (b) of Section 10 thereof; and that

"(b) The applicant group imposes no inequitable restrictions on admission to membership therein, and is truly representative of the Motor Bus Industry; and that

"(c) The Code as recommended is not designed to promote monopolies or to eliminate or oppress small enterprises and will not operate to discriminate against them, and will tend to effectuate the policy of Title I of the National Industrial Recovery Act.

"From evidence adduced during this hearing and from recommendations and reports of the various Advisory Boards, it is believed that this Code as now proposed and revised is satisfactory to this Industry, labor, the public, and this Administration It is recommended, therefore, that this Code, as herewith submitted, be approved.

"Respectfully,

"Hugh S. Johnson,
"Administrator."

The present case was submitted to the court prior to the filing of the decision of the Supreme Court on January 7, 1935, in the case of Panama Refining Company et al., Petitioners, v. A. D. Ryan et al. (Amazon Petroleum Corporation, Barney Cockburn, E. J. Boase et al. Petitioners, v. Archie D. Ryan et al.), 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. ——. On account of the conclusion reached in the present case and the foregoing fact, the bearing of this decision upon the present suit will not herein be discussed.

The allegations in the bill of complaint touching the failure of defendants to file with the Code Authority a copy of a certificate of convenience and necessity or a permit issued by the state of Washington and to comply with that provision of the statutes of the state of Washington and rules of the Department of Public Works requiring passenger motor carriers engaged in intrastate commerce to obtain and file with the Department liability and property damage insurance will be first considered.

The Supreme Court has said of such a certificate of public convenience and necessity required by state law: "Thus, the provision of the Washington statute is a reg-

ulation, not of the use of its own highways, but of interstate commerce. Its effect upon such commerce is not merely to burden, but to obstruct, it. Such state action is forbidden by the commerce clause. It also defeats the purpose of Congress, expressed in the legislation giving federal aid for the construction of interstate highways." Buck v. Kuykendall, 267 U. S. 307–316, 45 S. Ct. 324, 326, 69 L. Ed. 623, 38 A. L. R. 286.

That court has also said of a state statute requiring an indemnity bond to secure payment of claims resulting from injury to property carried in interstate commerce: "And it is a burden upon interstate commerce to impose on plaintiff the onerous duties and strict liability of common carrier, and the obligation of furnishing such indemnity bond to cover the automobile bodies hauled under his contracts as conditions precedent to his right to continue to carry them in interstate commerce. See Barrett v. New York, 232 U. S. 14, 33, 34 S. Ct. 203, 58 L. Ed. 483. Clearly, these requirements have no relation to public safety or order in the use of motor vehicles upon the highways, or to the collection of compensation for the use of the highways. The police power does not extend so far. It must be held that, if applied to plaintiff and his business, the act would violate the commerce clause of the Constitution." Michigan Public Utilities Comm. v. Duke, 266 U. S. 570, 577, 45 S. Ct. 191, 193, 69 L. Ed. 445, 36 A. L. R. 1105.

See, also, Sprout v. City of South Bend, 277 U. S. 163, 172, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; Liberty Highway Co. v. Michigan Public Utilities Comm. (D. C.) 294 F. 703, 708; Continental Baking Co. v. Woodring (D. C.) 55 F.(2d) 347, 357; Cobb v. Department of Public Works of State of Washington (D. C.) 60 F.(2d) 631, 640.

Section 1 of the National Industrial Recovery Act (title 15, U. S. C. § 701 [15 US CA § 701]) expressly declares: "It is hereby declared to be the policy of Congress to remove obstructions to the free flow of interstate and foreign commerce which tend to diminish the amount thereof."

■ It follows that that portion of the Code of Fair Competition for the Motorbus Industry requiring the filing of such a certificate of convenience and necessity and compliance with such state requirement as to such insurance is an exercise of power beyond that which the court may assume Congress intended by the National Industrial Recovery Act to give the President. Not only is an intent not shown to authorize such requirement, but, in so far as the intent is expressed in the act, such requirement, putting such commerce to the hazard of obstruction, is contrary to its spirit, if not its letter.

Defendants have filed the affidavit of Orr K. Scott, one of the defendants, in which he states:

"* * * I conferred with the local office of the N. I. R. A. at Portland, Oregon, in particular, * * *

"I thereupon revised my tariffs fixing said rate at One and 50/100 ($1.50) Dollars as required by the N. I. R. A. and after having submitted to them my said tariffs as so revised and after being advised by them that same were satisfactory. * * *

"That immediately upon commencing such last operation of busses and pursuant to the provision of the code of Fair Competition for the Motor Bus Industry, I did mail them a complete description of the route to be traveled, together with a statement of the permit issued me by the States of Washington and Oregon, and a statement that all requirements as to minimum wages, maximum hours of labor, child labor and the right of employees to organize as required by said Code, had been completely complied with. I also, and within twenty (20) days of commencing such last operation, mailed to the Motor Bus Code Authority, Washington, D. C., five (5) copies of my tariffs of rates and fares also showing the route traveled and the rules and regulations.

"I have also had copies of such tariffs as above specified again sent to said Code Authority since the institution of this suit. * * *

"I have complied with the terms thereof as hereinabove set forth and am willing to file every record as to my tariffs, permits and the like as may be required by said Code Industry. * * *"

■ Considering that the foregoing is a concession upon defendant's part that the requirement of the code, concerning the filing with the Motorbus Code Authority of a description of the route or routes of operation and the further requirement as to filing of tariffs, are valid, the demurrer will be overruled.

■ In view of the prayer of the complaint that defendants be enjoined until they have complied with the act and code, and further considering the defendants' offer as

expressed in the affidavit of a willingness to comply in respect to such filings, any restraining order or temporary injunction will, for the present, be denied.

Any order or orders embodying the foregoing rulings will be settled upon notice.

The clerk is directed to notify all attorneys who have appeared in this proceeding of the filing of the foregoing ruling.