Darrell V. BOYLAN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17672.

United States Court of Appeals Ninth Circuit.

Nov. 19, 1962.

Before HAMLEY and KOELSCH, Circuit Judges, and TAYLOR, District Judge.

HAMLEY, Circuit Judge.

Darrell V. Boylan was convicted on all three counts of an information charging him with engaging in the business of a contract carrier by water without first obtaining a permit from the Interstate Commerce Commission (Commission). A fine of four hundred dollars was imposed on the first count. On the other two counts the imposition of sentence was suspended and Boylan was put on probation for a period of three years. Boylan appeals.

It is provided in section 309(f) of the Interstate Commerce Act (Act), 49 U.S. C. § 909(f), that, with exceptions not here material, no person shall engage in the business of a contract carrier by water unless he or it holds an effective permit issued by the Commission authorizing such operation.[1] Under section 317 (a) of the Act, 49 U.S.C. § 917(a), a knowing and wilful violation of section 309(f) is a misdemeanor.

The cause was tried to the court on the following stipulated facts. In April and May, 1960, Boylan was engaged in business as Richland Tug and Ferry. On April 27, May 5, and May 11, 1960, under individual contracts or agreements, he furnished for compensation the tug "Bonnie B" to Montag-Halvorson-McLaughlin and Associates, a construction firm. On these occasions the tug was used by that firm in the Columbia River to tow its barge, loaded with the firm's construction equipment, from the Ice Harbor Dam Site in Washington, through the territorial waters of Oregon to the John Day Dam Site in Washington. On none of these occasions did Boylan hold a permit from the Interstate Commerce

---

Dusenbery, Martin, Beatty & Parks and Alex L. Parks, Portland, Or., for appellant.

Sidney I. Lezak, U. S. Atty., Charles H. Habernigg, Asst. U. S. Atty., and Thomas R. Jones, Atty., I. C. C., Portland, Or., for appellee.

---

1. Under section 309(g), 49 U.S.C. § 909 (g), the Commission, upon application being made, is required to issue such a permit:

"* * * if it finds that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that such operation will be consistent with the public interest and the national transportation policy declared in the Interstate Commerce Act * * *."

Commission authorizing him to engage in the business of a contract carrier by water.

Boylan concedes that in furnishing the tug for compensation to the construction firm so that the latter could transport its own property in interstate commerce, he was engaging in the business of a contract carrier by water, as that term is defined in the Act. Section 302(e), 49 U.S.C. § 902(e), provides in part:

" * * * The furnishing for compensation (under a charter, lease, or other agreement) of a vessel, to a person other than a carrier subject to this Act, to be used by the person to whom such vessel is furnished in the transportation of its own property, shall be considered to constitute, as to the vessel so furnished, engaging in transportation for compensation by the person furnishing such vessel, within the meaning of the foregoing definition of 'contract carrier by water.' * * * "

He contends, however, that in embracing the kind of vessel-furnishing business which he operates within the statutory term "contract carrier by water," and consequently requiring one who would engage in such a business to obtain a permit from the Commission, section 302(e) of the Act offends the Due Process Clause of the Fifth Amendment.

Two arguments are advanced in support of this contention. The first of these, and the one which we will first discuss, is that under the Due Process Clause no business may be subjected to permit or certificate regulation unless it is one which is "affected with a public interest," or stated differently, "impressed with a public purpose." The business of furnishing a vessel for compensation to one who intends to and does use it to transport his own property in interstate commerce, appellant asserts, is not a business affected with a public interest or impressed with a public purpose.

Appellant concedes that the United States may constitutionally exercise some regulation over the water transportation equipment which he furnishes for use in interstate commerce. He cites rates, safety and security to the public for liability incurred in the operation of leased equipment as permissible subjects of federal regulation.

He argues, however, that his business is not one which he may be constitutionally precluded from conducting. The record does not indicate that appellant has ever applied for and been denied a permit, to lease his equipment to private shippers for use in transporting their own goods. But appellant argues that since his operation is characterized as that of a contract carrier, and since contract carriers are required to obtain a permit which the Commission may grant or deny on the basis of public convenience and necessity, this entire aspect of the Act is based on the assumption that his operation might be prohibited entirely.[2]

In support of his thesis appellant relies primarily on three decisions of the Supreme Court and three state court decisions. In discussing these and other cases we will consider first, whether the concept "affected with a public interest" currently receives federal judicial recognition for any purpose, and second, whether in any event it has applicability in testing the validity of federal legislation under the Commerce Clause.

In two of these Supreme Court cases, Michigan Utilities Commission v. Duke, 266 U.S. 570, 45 S.Ct. 191, 69 L.Ed. 445 (1925) and Frost & Frost Trucking Co. v. Railroad Commission of California, 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1131 (1926), the state statutes invalidated required contract carriers by motor vehicle to assume all of the duties and burdens

2. No issue as to how other economic regulations would affect him if he held a contract carrier permit is presented in this case and any such issue would be premature. See Champlin Refining Co. v. United States, 329 U.S. 29, 67 S.Ct. 1, 91 L.Ed. 22; United States v. Champlin Refining Co., 341 U.S. 290, 71 S.Ct. 715, 95 L.Ed. 949.

of a common carrier.[3] The Court did not specifically refer to the concept "affected with a public interest" in either case. In Duke, however, it did refer to Wolff Co. v. Industrial Court, 262 U.S. 522, 535, 43 S.Ct. 630, 67 L.Ed. 1103, in which that concept was applied.

The import of these cases is illustrated by the Court's statement in Duke (pages 577–578, 45 S.Ct. p. 193, 69 L.Ed. 445):

" * * * it is beyond the power of the State by legislative fiat to convert property used exclusively in the business of a private carrier into a public utility, or to make the owner a public carrier, for that would be taking private property for public use without just compensation, * * *."

Considered in the light of the problem there presented, these words do not support the view that a private carrier's right to operate may not be made to depend upon a finding of public convenience and necessity. But if Duke and Frost ever were authority for such a proposition, they are no longer so in view of Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, discussed below.

The third and final Supreme Court decision primarily relied upon by appellant in support of the Due Process argument under discussion is New State Ice Co. v. Liebmann, 285 U.S. 262, 52 S.Ct. 371, 76 L.Ed. 747 (1932). It was there held that the business of manufacturing and selling ice is essentially a private business and not so affected with a public interest that a state legislature may constitutionally limit the number of those who may engage in it, in order to control competition.

But two years after Liebmann was handed down, the Supreme Court decided Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940. In that case the concept "affected with a public interest" was abandoned as a test to be applied in determining whether a business could, consistent with due process, be subjected to economic regulation.[4]

While Nebbia involved price regulation, the rationale there adopted by the Court is equally applicable with regard to all economic regulation.[5] The contrary rationale of Liebmann has not been applied or approved in any subsequent case.[6] Quite to the contrary, the Supreme Court,

---

**3.** These decisions were so construed by the Supreme Court in Stephenson v. Binford, 287 U.S. 251, 266–267, 53 S.Ct. 181, 77 L.Ed. 288. See also California State Automobile Association Inter-Insurance Bureau v. Maloney, 341 U.S. 105, 108, 71 S.Ct. 601, 95 L.Ed. 788.

**4.** Likewise, in Breard v. Alexandria, 341 U.S. 622, 632, 71 S.Ct. 920, 927, 95 L.Ed. 1233 (1951), the Supreme Court stated that:

" * * * neither case [including Liebmann] is in as strong a position today as it was when Bunger appealed. See Olsen v. Nebraska, 313 U.S. 236, 243 [61 S.Ct. 862, 85 L.Ed. 1305] et seq., and Lincoln Union v. Northwestern Co., 335 U.S. 525, 535 [69 S.Ct. 251, 93 L.Ed. 212]. * * *"

The reference to the "Bunger" appeal is to Town of Green River v. Bunger, 50 Wyo. 52, 58 P.2d 456 (1936).

**5.** See, for example, Breard v. Alexandria, 341 U.S. 622, 632, 71 S.Ct. 920, 95 L.Ed. 1233, wherein the validity of a so-called "Green River ordinance," forbidding house-to-house soliciting, was upheld, and

in which Nebbia was cited as authority for the result reached.

In "The Federal Regulation of Transportation," West Publishing Co., 1953, at page 51, Professors Carl A. Auerbach and Nathaniel L. Nathanson state: "The denouncement of this doctrinal development came with Nebbia. * * *" In 1 Davis, Administrative Law Treatise, § 3.09, page 205, Professor Davis states: "The concept of business affected with a public interest has now disappeared from federal constitutional law." In support of this view the author cites Olsen v. Nebraska, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305, and Nebbia.

As indicated in note 4, the Liebmann decision was also questioned, on a somewhat different ground, in Breard v. Alexandria, 341 U.S. 622, 632, 71 S.Ct. 920, 95 L. Ed. 1233.

**6.** There are non-committal references to that decision in Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 192, 57 S.Ct. 139, 81 L.Ed. 109; and Olsen v. Nebraska, 313 U.S. 236, 244, note 5, 61 S.Ct. 862, 85 L.Ed. 1305.

in 1946, cited with approval the dissenting opinion of Justice Brandeis in that case. See Fay v. New York, 332 U.S. 261, 296, 67 S.Ct. 1613, 91 L.Ed. 2043.

In the face of this doctrinal change of position by the Supreme Court, the fact that certain state courts [7] still adhere to Chief Justice Waite's "affected with a public interest" dictum announced in Munn v. Illinois, 94 U.S. 113, 126, 24 L. Ed. 77, is without significance in federal adjudication.

■■ Moreover, we find no indication that the "affected with a public interest" test has ever been applied to determine the validity of federal legislation enacted under authority of the Commerce Clause.[8]

The exercise of the commerce power is subject to the Due Process Clause of the Fifth Amendment. See United States v. Carolene Products Co., 304 U.S. 144, 147–148, 58 S.Ct. 778, 82 L.Ed. 1234; F. & A. Ice Cream Co. v. Arden Farms Co., D.C., 98 F.Supp. 180, 182–183. But the requirements of due process are satisfied if the law passed in the exercise of the Commerce Clause has a reasonable relation to a legitimate legislative purpose and is not arbitrary, capricious or discriminatory. If "the means chosen are appropriate to the permissible end, there is little scope for the operation of the due process clause." Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 558, 57 S.Ct. 592, 81 L.Ed. 789.[9]

■ Apart from his "affected with a public interest" argument, however, appellant seeks to show that section 302(e), as here applied, has no reasonable relation to a proper legislative purpose and is therefore arbitrary.[10] He does so by

7. The state decisions primarily relied upon by appellant are: Brinks Express Company v. Public Service Commission, 117 Pa.Super. 268, 178 A. 346; Hertz Drive-urself Stations, Inc. v. Siggins, 359 Pa. 25, 58 A.2d 464, 7 A.L.R.2d 438; Hertz Corporation v. Heltzel and Snyder, et al., 217 Or. 205, 341 P.2d 1063.

8. This is not to say that the public's interest in particular legislative objectives has not been considered in determining the constitutionality of various Congressional exercises of the commerce power. E. g., Wilson v. New, 243 U.S. 332, 346–347, 37 S.Ct. 298, 61 L.Ed. 755. But appellant has not cited, nor have we found, any cases in which the concept "affected with a public interest" has been specifically applied to determine the due process validity of federal economic regulation.

9. Since Congress has expressly been given the power to regulate interstate commerce, the permissible ends of its regulation have been more easily and early defined. Thus, in Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 229, 20 S.Ct. 96, 103, 44 L.Ed. 136, the Supreme Court held that despite the Fifth Amendment, " * * * the power of Congress to regulate interstate commerce comprises the right to enact a law prohibiting the citizen from entering into those private contracts which directly and substantially * * * regulate to a greater or less degree commerce among the States." And in Tagg Bros. v. United States, 280 U.S. 420, 439, 50 S.Ct. 220, 74 L.Ed. 524, the Congressional power to regulate commission rates charged by livestock buyers and sellers was sustained against a due process challenge, not because the business concerned was "affected with a public interest," but because the purpose of the regulation was to prevent an "undue burden upon, and obstruction of" interstate commerce.

The process of delimiting the permissible ends of state exercises of the police power has been a more tortuous one, however. The concept "affected with a public interest" is a product of one stage in this evolutionary process. It served, for a time, to define the permissible ends of state economic regulation.

10. As stated above, supported by the authority of Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 558, 57 S.Ct. 592, 81 L.Ed. 789, this is the test to be applied in measuring the constitutionality, under the Due Process Clause of the Fifth Amendment, of federal legislation enacted pursuant to the Commerce Clause. Incidentally, it is also the test now applied in measuring the constitutionality, under the Due Process Clause of the Fourteenth Amendment, of state legislation enacted in the exercise of the police power. Thus, in Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, which sounded the death knell of the "affected with a public interest" test, insofar as federal adjudication is concerned, the court said, at page 537, 54 S.Ct. at page 516, 78 L.Ed. 940:

" * * * If the laws passed are seen to have a reasonable relation to a proper

quoting a comment in a decision of the Commission concerning the need of such legislation, and then striving to demonstrate the unsoundness of the comment. This Commission comment, quoted below, is contained in G. M. Cox Shipyard, Inc., 260 I.C.C. 20, 21:

"* * * Regulation of applicant and other furnishers of vessels, as contemplated by section 302(e), results from their position in the national transportation system. They provide a pool of equipment from which other carriers draw during emergencies and peak-load periods. Unregulated use of this pool of equipment by shippers well might place them in the position of being able to use the charter market as leverage to enforce their demands for unreasonable rates and discriminatory service from common and contract carriers. * * * " [11]

Appellant points out that, in this observation, the Commission indicated that the legislation was designed to meet a condition which "might well" develop, not one which "would" develop. Appellant believes that "might well" is too speculative.

■ Due process does not require Congress to surrender foresight based on its judgment as to reasonable possibilities. Its sanctions do not demand that the legislative hand be stayed until an anticipated evil has become a reality or demonstrably inevitable. In our opinion it is a proper legislative purpose to deal with conditions inimical to the public interest which, in the judgment of Congress, "might well" come about unless something is done about it.

■ Appellant's next observation concerning the quoted Commission comment is that the Commission was fearful of the rates the owners of such equipment might charge—not that the existence of the pool of equipment was in and of itself bad.

Vessel-furnishers could not long remain in that business unless their rates were low enough to attract shippers away from currently regulated common and contract carriers. Thus it was reasonable for Congress to assume that when vessels are offered for lease to shippers competitive pressure is exerted upon regulated carriers. The control of that pressure was a proper legislative purpose and the statutory means of doing so—requiring permit authority—has a reasonable relation to that purpose.

■ Finally, appellant asserts that the quoted Commission comment indicates that the persons being protected were not members of the public but only the common and contract carriers already certified.

The maintenance of a stable and adequate system of common and contract carriers by water is a stated objective of the national transportation policy.[12] Insofar as the immediate effect of the regulations here in question may be advantageous to established common and contract carriers, the same is warranted as a means of attaining that objective.

Appellant advances two other lines of argument under this branch of the case. Posing a series of hypothetical cases involving the attempted regulation of one who leases a hotel to another, one who leases an ice plant to another, or one who constructs a private grain elevator for his own use, he rhetorically asks, "Can this possibly be justified?"

None of these assumed factual situations predicate a relationship between the named activity and a line of business activity then being properly subjected to economic regulation. In this critical re-

---

legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court *functus officio.* * * * "

11. The quoted comment first appeared in C. F. Harms Company Contract Carrier Application, 250 I.C.C. 513, 516.

12. See Act September 18, 1940, c. 722, Title 1, § 1, 54 Stat. 899, 49 U.S.C.A., note preceding section 1.

spect appellant's hypothetical cases are not like the one before us.

Appellant calls attention to a long line of cases in which it has been held that a lessor of transportation equipment is not a "carrier." But in our case this has been accomplished by statutory definition. It is not significant, however, that Congress has chosen to so categorize persons who lease vessels. It could have termed them "vessel furnishers" and subjected them to the same regulation as contract carriers by water.

■ Where the legislative judgment as to reasonableness is drawn into question, the judicial inquiry is restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it. United States v. Carolene Products Co., 304 U.S. 144, 154, 58 S.Ct. 778, 82 L.Ed. 1234.

There are no stated facts in this record bearing upon this question. It follows that the statute must be deemed to have a reasonable basis in fact unless the contrary is apparent from the face of the statute or from facts which may be judicially noted. In our opinion the statute here under question is not vulnerable in either of these respects.

■ The other due process argument which appellant makes concerning section 302(e) of the Act is that the statute effectuates an arbitrary, unjust, and discriminatory classification whereby vessel-furnishers are subjected to economic regulation, but private lessors of motor vehicle and rail equipment are not so regulated.

■ The factual premise of this argument cannot be questioned. The private lessors of vessels are subjected to economic regulation under Part III of the Interstate Commerce Act, whereas private lessors of rail and motor vehicle equipment are not subjected to economic regulation under Parts I and II of that Act, respectively.[13] It may also be judicially noticed that interstate water carriers are in active competition with interstate rail and motor vehicle carriers. See Cornell Steamship Co. v. United States, 321 U.S. 634, 637, 64 S.Ct. 768, 88 L.Ed. 978.

■ The Fifth Amendment, unlike the Fourteenth Amendment, contains no equal protection clause. Nor does the Constitution provide any other express guarantee against discriminatory legislation by Congress. But while due process and equal protection cannot be perfectly equated, discriminatory federal legislation may be so removed from any legitimate legislative objective that it violates that basic fairness which constitutes Fifth Amendment due process. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884.

In Bolling v. Sharpe the Court dealt with a federally administered program which included systematic and conscious discrimination against members of the Negro race. The Court held that discrimination based on racial differences can have no proper legislative purpose, and so offends the Due Process Clause of the Fifth Amendment.

■ It is this type of discrimination that appellant would have us find in the legislation now before us. But at most, appellant has called attention to a lack of uniformity in the way that Congress has exercised its power under the Commerce Clause. He has failed to demonstrate that the lack of uniformity in the legislation as it now exists is inappropriate to any proper legislative purpose. His argument wholly fails to take into account that "a legislature may hit at an abuse which it has found, even though it

13. As appellant points out, when this legislation was before Congress, its attention was specifically directed to the fact that, under section 302(e), vessel-furnishers would be regulated whereas private lessors of rail and motor vehicle equipment were not regulated under the Act. But, notwithstanding, Congress deliberately chose to regulate vessel-furnishers and, in the process, rejected an amendment which, on the ground of preserving uniformity, would have expressly excluded vessel-furnishers from regulation. See 84 Cong. Rec. 9979; 86 Cong. Rec. 5858.

has failed to strike at another." United States v. Carolene Products Co., 304 U. S. 144, 151, 58 S.Ct. 778, 82 L.Ed. 1234.[14]

We conclude that the Due Process Clause of the Fifth Amendment is not violated by section 302(e) of the Act, as applied under the facts of this case.

The judgment is affirmed.

14. Similarly in Currin v. Wallace, 306 U.S. 1, 14, 59 S.Ct. 379, 386, 83 L.Ed. 441, involving the validity, under the Fifth Amendment, of an act which authorized inspection and grading of tobacco auctioned at tobacco warehouses designated by the Secretary of Agriculture, leaving other warehouses free of such regulation, the Court said:

"* * * There is no requirement of uniformity in connection with the commerce power * * *.

"* * * It is the essence of the plenary power conferred [under the Commerce Clause] that Congress may exercise its discretion in the use of the power. Congress may choose the commodities and places to which its regulations shall apply. Congress may consider and weigh relative situations and needs. Congress is not restricted by any technical requirement but may make limited applications and resort to tests so that it may have the benefit of experience in deciding upon the continuance or extension of a policy which under the Constitution it is free to adopt. As to such choices, the question is one of wisdom and not of power."