373 P.2d 370

**CANTLAY & TANZOLA, INC., a corporation, Appellant,**

v.

**George F. SENNER, Jr., E. T. (Eddie) Williams, Jr., and A. P. (Jack) Buzard, as members of and constituting the Arizona Corporation Commission, Appellees,**

and

**Reliable Transportation Company, a corporation, and Arizona Tank Lines, Inc., a corporation, Intervenors.**

No. 7444.

Supreme Court of Arizona.

En Banc.

July 13, 1962.

Rehearing Denied Sept. 25, 1962.

Minne & Sorenson, Lewis, Roca, Scoville, Beauchamp & Linton, John P. Frank, Phoenix, for appellant.

Robert W. Pickrell, Atty. Gen., Phoenix, Langmade & Langmade, Evans, Kitchel & Jenckes, Earl H. Carroll, Phoenix, for appellees.

LOCKWOOD, Justice.

This is an appeal from a judgment of the Superior Court affirming a decision and order of the Arizona Corporation Commission, hereafter called the Commission, which denied appellant Cantlay & Tanzola, Inc., hereafter called Cantlay, a contract carrier permit. It is a sequel to litigation which terminated in Arizona Corporation Commission v. Reliable Transportation Company, 86 Ariz. 363, 346 P.2d 1091 (1959).

Cantlay, as an interstate common carrier, had transported petroleum products for Texaco, Inc. and other petroleum companies to various points in Arizona. The interstate hauling of petroleum products to Arizona was vastly reduced after 1956 because of the installation of an interstate pipeline between El Paso, Texas and Los Angeles, California, with outlets in Arizona at both Tucson and Phoenix. The petroleum products received at these points were thereafter stored in tank farm facilities and ultimately distributed by motor carriers throughout Arizona on an intrastate basis. In order to meet the change in circumstances and to continue to haul petroleum products within the State of Arizona, Cantlay entered into contracts with seven of the eight petroleum companies doing business in Arizona, and made application to the Commission for contract carrier permits, which were granted. Reliable Transportation Company, and Arizona Tank Lines, Inc., (both corporations and intervenors herein), successfully contested the legality of the Commission decision and order granting the contract carrier permits in the Reliable case. This court held that under the existing fact situation Cantlay did not change its character as a common motor carrier by proposing to act under the device of a special contract with each company.

After the ruling in the Reliable case, Cantlay entered into a contract with Texaco, Inc. (hereafter designated Texaco) only, (in contrast to the several contracts it had

entered into with seven petroleum companies in the previous case) to haul petroleum products for this company from the pipelines to: (1) twelve bulk plants of Texaco, (2) the United States Government, and (3) American Smelting and Refining Company, within the State of Arizona. It thereupon applied for a contract carrier's permit to execute this contract with Texaco, which application the Commission denied, Cantlay then brought this action in the Superior Court to set aside the Commission's decision and order. The trial court made findings of fact and conclusions of law upholding the action of the Commission, whereupon Cantlay has appealed.

We have repeatedly held that we will not disturb the findings and judgment of the trial court when supported by substantial evidence, and that all the evidence and inferences therefrom must be reviewed by this court in the light most favorable to sustain the judgment of the lower court. Bohmfalk v. Vaughan, 89 Ariz. 33, 357 P. 2d 617 (1960).

However in the very nature of judicial review, this court is not bound by conclusions of law of the trial court as applied to its findings of fact. Combustion Engineering, Inc. v. Arizona State Tax Commission, 91 Ariz. 253, 371 P.2d 879, (1962).

In the instant case the trial court made five findings of fact.[1] Finding number one is extremely general in nature. It merely indicates that under the provisions of the contract between Cantlay and Texaco here involved, the services to be performed by Cantlay do not differ materially from the services previously performed by Cantlay under a prior contract between the same parties.[2] An examination of the record shows that there were certain differences in the services to be performed under these two Texaco contracts. The finding appar-

1. They were as follows:
 "1. No significant difference appears between the services proposed to be performed by Cantlay & Tanzola, Inc., under its contract dated February 4, 1960, and those intrastate services previously performed by Cantlay & Tanzola, Inc., prior to January 31, 1960, for Texaco, Inc."
 "2. That Cantlay & Tanzola, Inc., under the contract dated February 4, 1960, would transport petroleum and petroleum products to more than three consignees within the State of Arizona."
 "3. That the volume of petroleum contemplated to be transported by Cantlay & Tanzola, Inc., under the contract would be in excess of 10,000,000 gallons annual-

ly, with minimum monthly shipments in excess of 750,000 gallons."
 "4. That existing common carriers in the State of Arizona, including Reliable Transportation Company and Arizona Tank Lines Inc., are providing adequate and satisfactory service for Texaco, Inc."
 "5. That the proposed operations of Cantlay & Tanzola, Inc., including the number of consignees, the volume of shipments, and its methods of operation would result in the company playing a substantial role in the field of petroleum transportation within the State of Arizona."

2. A contract practically identical with those which Cantlay executed with each of seven petroleum companies.

ently acknowledges differences, but asserts that they were not "significant". This is so broad and general a statement that we fail to see its significance as a basis for any legal conclusion in this controversy.

 We agree with Cantlay's proposition that finding number two is one of mixed finding of fact and conclusion of law. In the Reliable case this court referred to A.R.S. § 40–601, subd. B. (1956).[3] We indicated that such "a legislative declaration that establishment of one fact is prima facie evidence of another fact is entitled to greater weight than the ordinary presumption arising out of common law rules of evidence." 86 Ariz. at 374, 346 P.2d at 1098. Although we referred to "three classes of consignees" we did not determine specifically that the meaning of "consignee", as used in the statute, was limited to a single individual recipient, as opposed to a business entity which might employ numerous individuals at several receiving points. We think the former interpretation is too narrow, and hold that a "consignee" may be an individual or business entity, which may have numerous employees or receiving points. The trial court's "finding" was obviously an adoption of the interpretation of "consignee" in the narrow sense, which we reject.

In the Reliable case we discussed the characteristics of a common carrier and indicated that the essential distinction between a common and a contract motor carrier is the holding out by the former that it is ready to serve the public generally. In determining whether the carrier was a common or contract carrier, we said "[t]he important thing is what it does, not what its charter says."[4]

In the Reliable case, there was no question that Cantlay offered to transport petroleum for more than one consignor and to more than three consignees. We did not hold that this of itself constituted appellants therein common carriers, but stated that "as a result, appellants have the burden to exclude themselves from the class of common carriers * * *. This burden appellants have failed to sustain nor have they overcome the constitutional and legislative thrusts in favor of defining carriers generally as common carriers." 86 Ariz. at 377, 346 P.2d at 1100.

We will apply the reasoning and criteria set forth in the Reliable case to determine whether Cantlay in the instant case has carried the burden of excluding itself from the class of common carriers. In the first place, Cantlay based its application for a contract carrier permit upon a

---

3. "The transportation for more than one consignor, or to more than three consignees, by any motor carrier, shall be prima facie evidence that such motor carrier is acting as a common carrier."

4. 86 Ariz. at 376, 346 P.2d at 1100, quoting from Terminal Taxicab Co. v. Kutz, 241 U.S. 252, 254, 36 S.Ct. 583, 60 L.Ed. 984 (1916).

single contract with a single consignor—Texaco. It claimed that the contract was to deliver petroleum products for the consignor, Texaco, to *three* consignees only: Texaco, The United States Government, and American Smelting & Refining Company. The evidence showed that while shipments to Texaco bulk plants in Arizona were consigned to "Texaco", many of the plants were run by managers on a commission instead of salary basis. For some purposes they might be considered independent operators, but they all have in common their exclusive handling of Texaco petroleum products under a contract, whereby Texaco exercises a high degree of control over the bulk plant business, and the petroleum product remains that of Texaco until sold for it by the plant manager. The Smelting Company has two delivery points in Arizona, and of course actual acceptance of petroleum products from Texaco would be made by separate individuals for the company. According to the testimony, Texaco makes deliveries of petroleum products to the United States Government chiefly at military installations within the State of Arizona, although the contract does not limit the delivery points nor the various branches of the United States which might receive petroleum products from Texaco under the contract. We cannot say under these circumstances that there were more than *three* consignees.

■ The testimony shows that Texaco, in doing business in the State of Arizona, makes deliveries to various other consignees or classes of consignees, such as gasoline stations, individual ultimate commercial accounts and other ultimate consumers, which Cantlay under its contract does not agree to service. The testimony also shows that Cantlay no longer solicits other prospective shippers of petroleum products on an intrastate basis in Arizona. Further, the evidence shows that certain equipment has been specifically dedicated to the contract services of Cantlay for Texaco, which cannot be interchanged with any of Cantlay's interstate equipment. The present contract between Cantlay and Texaco contains many provisions which are the same or similar to those in the previous Cantlay-Texaco contract which was involved in the Reliable case. The rates proposed were to be subject to amendment, and to be "competitive". Risk of loss during transportation was to be borne by Cantlay. Appellees claim that these provisions are the same as those imposed by law or regulation on common carriers, and that therefore Cantlay must be held to be a common carrier. We know of no rule precluding a contract carrier from voluntarily assuming a risk of loss during transportation which is not imposed on it by law, nor of establishing rates which may be "competitive" in the sense that they are as attractive to the principal for whom

the contract carrier is acting as are rates of other carriers, whether common or contract.

■ The trial court's finding number three as to the volume of petroleum contemplated to be transported by Cantlay under its contract with Texaco, is not disputed. However it apparently has no particular significance in the absence of a finding as to its ratio to the entire volume of petroleum products transported intrastate. The evidence discloses that the ratio of petroleum products which Texaco distributes throughout the state, to the total volume of petroleum distributed in Arizona by all the oil companies, is approximately 3½% per year. Finding number five is at most a mixed finding of fact and conclusion of law, the latter predominating. In view of our holding as to the definition of "consignee", and the small amount of petroleum products distributed by Texaco in Arizona, in relation to the total volume distributed by the various other oil companies, we cannot see how the trial court arrives at the legal conclusion that the proposed operations of Cantlay would result in the company playing "a substantial role" in the field of petroleum transportation within the State of Arizona.

■ Finding number four that the intervenors, Reliable Transportation Company and Arizona Tank Lines, Inc., "are pro-

viding adequate and satisfactory service for Texaco, Inc.," is not disputed but is immaterial to the issues involved in an application for a contract carrier's permit. Such a finding is important only in the application of a carrier for a common carrier's permit under A.R.S. § 40–607. A.R.S. § 40–608, subd. C., which governs applications for contract carriers, requires only that the Commission find:

> "that the privilege sought will not endanger the safety of the public or interfere with the public use of the public highways, or impair the condition or maintenance of the highways, directly or indirectly, and the applicant is a fit and proper person to receive such permit, * * *."

This statute originated as § 7, Ch. 100, L. '33, which did contain language requiring a finding that the privilege sought would not impair the efficient public service of any authorized common motor carrier then adequately serving the same territory. However § 1, Ch. 106, L. '49, specifically eliminated this language. The legislature thus definitely indicated its intent that the adequacy or inadequacy of service by a common carrier was not to be considered in reviewing the application of a contract carrier. There is no conflict in the evidence that the public safety is not endangered, public use of the highways will not be im-

paired, and that Cantlay is "a fit and proper person to receive such permit."

■ Although the operations of Cantlay under the contract here involved, present some similarity to its operations under the contract involved in the Reliable case, we are of the opinion that they differ in material respects. Here Cantlay has chosen to offer its services to one employer; it does not intend to carry the employer's products to all of the latter's customers, but only to three consignees; it will devote specific equipment to the carrying out of its contract; it does not solicit or hold itself out as being in the business of carrying petroleum products intrastate to the general public engaged in the distribution of petroleum in Arizona. Under such circumstances, we believe it is evident that Cantlay carried the burden of excluding itself from the class of common carriers, and of demonstrating that its operations were instead those of a contract carrier. In this respect the decision and order of the Arizona Corporation Commission denying the application of Cantlay & Tanzola, Inc., based upon the February 4, 1960 contract with Texaco, Inc., was unreasonable and arbitrary. The trial court should have so held. Judgment reversed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concur.