396 P.2d 23

Sam WILLIAMS, Richard Richards, Giles Bosick and Doris Ila Bosick, Executrix of the Estate of George Bosick, deceased, doing business as Humboldt Truckers, Petitioners,

v.

The CORPORATION COMMISSION of the State of Arizona and A. P. "Jack" Buzard, E. T. "Eddie" Williams, Jr., and John P. Clark, the Members thereof, Respondents.

No. 8390.

Supreme Court of Arizona.

En Banc.

Oct. 23, 1964.

Favour & Quail, by John M. Favour, Prescott, for petitioners.

Robert W. Pickrell, Atty. Gen., and Robert S. Murlless, Asst. Atty. Gen., for respondents.

UDALL, Chief Justice.

This is an original proceeding in certiorari initiated by Humboldt Truckers, hereinafter referred to as petitioners, against the Arizona Corporation Commission, hereinafter referred to as the Commission. The purpose of this proceeding is to challenge that portion of the order entered by the Commission on March 30, 1964, in granting petitioners a contract motor carrier permit, that the rates of petitioners as contract motor carriers "be at a level of common carrier rates."

The record reveals that petitioners since 1946 entered into successive contracts with Shattuck Denn Mining Company, hereinafter referred to as Shattuck Denn, to haul the ores, supplies, equipment and concentrates for the company's operations at the Iron King Mine and Mill at Humboldt,

Arizona. Successive contract motor carrier permits have been issued by the Commission to petitioners for permission to operate their motor vehicles on the public highways of the State under these contracts.

Prior to the Commission's order which is complained of, the last motor carrier permit was issued to petitioners on February 13, 1963. This permit and the contract between petitioners and Shattuck Denn had an expiration date of November 6, 1964. On March 2, 1964, petitioners and Shattuck Denn entered into an extension and renewal of their subsisting agreement to extend the contract for three years. The March 2, 1964 agreement was identical to the prior agreement in its terms, except for the addition of a new service: to haul "Lead, Zinc and Iron products from Shipper's Mill to Shipper at any point in Arizona, specific rates to be established by mutual agreement." Petitioners filed an application pursuant to A.R.S. § 40–608 (1956) for an amended contract carrier permit under the new agreement. The application was noticed for hearing and heard on March 18, 1964. Two common carriers intervened in the proceedings before the Commission. On March 30, 1964, the Commission entered its formal order issuing petitioners a contract motor carrier permit pursuant to A.R.S. § 40–608 (1956), but placed a limitation in the permit limiting the haulage contract to "rates to be at a level of common carrier rates."

Petitioners made timely application to the Commission for a rehearing, which was denied. Petitioners subsequently sought review in this Court by certiorari on the grounds that the Commission exceeded its jurisdiction in attempting, in effect, to regulate the rates of a contract motor carrier.

The Commission in justifying their action contend that they had jurisdiction to impose the rate limitation because there is an unsubstantial difference between petitioners' operation as a contract motor carrier and that of a common motor carrier. This contention is totally without merit. This Court has on several occasions made it quite clear that there is a substantial difference between a contract motor carrier and a common motor carrier. In Arizona Corporation Commission v. Reliable Transportation Company, 86 Ariz. 363, 346 P.2d 1091 (1959), this Court explained the distinction between a contract carrier and a common carrier in the following language:

> "The distinction between the two classes of motor carriers becomes meaningful in relation to the extent of regulation and control by the Commission. Thus, under A.R.S. § 40–605, applicable only to common motor carriers, the Commission is authorized to fix and determine 'just, reasonable and sufficient rates, fares, charges and classifications'; to 'regulate the facilities, service and safety of operations'; to regulate 'operating and time schedules

to meet the needs of the public and to insure adequate transportation service through the territory traversed or served by the carriers and thereby prevent unnecessary duplication of service'; to prescribe a uniform system of accounts; to require annual reports, schedules, tariffs, and other data; and to '[s]upervise and regulate such carriers in all matters affecting relations between the carriers and the public and between the carriers and other common motor carriers, * * *.'

"A.R.S. § 40-606 requires each common motor carrier to furnish full information, including its financial condition, equipment, physical property, routing, rates and schedules. A.R.S. § 40-612 requires a common motor carrier to obtain permission from the Commission before abandoning or discontinuing any service which it was authorized to operate.

"Significantly, none of the above sections applies to contract motor carriers, with the exception that such a carrier must notify the Commission after it has ceased or abandoned any of its operations. (A.R.S. § 40-612)

"The distinction between a common and contract motor carrier applies also to the certification required before either may operate within the State. Under A.R.S. § 40-607 a common motor carrier is required to satisfy the Commission that 'the public convenience and necessity requires the proposed service * * *.' A.R.S. § 40-608 requires the Commission to find that the granting of a permit to a contract motor carrier—'* * * will not endanger the safety of the public or interfere with the public use of the public highways, or impair the condition or maintenance of the highways, directly or indirectly * * *.'" pp. 374, 375, 346 P.2d pp. 1098, 1099.

The Court went on to say:

"The very material differences in the extent of regulation of common and contract motor carriers suggest the legislative rational to be given effect in defining the two classes of carriers. Under the doctrine of 'regulated monopoly,' which is 'the basic law of the state' (see Old Pueblo Transit Co. v. Arizona Corp. Commission, 1958, 84 Ariz. 389, 390, 329 P.2d 1108, 1109), it is obvious that certain motor carriers are deemed to be so affected with the public interest and welfare that they should be regulated in the interest of the public; other carriers which are not so affected need not be subject to such stringent regulation." p. 375, 346 P.2d p. 1099.

Also see Visco v. State, 95 Ariz. 154, 388 P.2d 155 (1963).

No rate-fixing power is contained in A.R.S. § 40–608 (1956). Nor can any rate-fixing power be implied in light of the legislative history of this statute which was discussed in Cantlay & Tanzola, Inc. v. Senner, 92 Ariz. 63, 373 P.2d 370 (1962). In this case the Court pointed out that § 1, Ch. 106, L. '49 specifically eliminated the requirement originally imposed by § 7, Ch. 100, L. '33 requiring the Commission to make a finding that the privilege sought would not impair the efficient public service of any authorized common carrier then adequately serving the same territory. In this same case at page 68, 373 P.2d at page 373 the Court said:

"We know of no rule precluding a contract carrier from * * * establishing rates which may be 'competitive' in the sense that they are as attractive to the principal for whom the contract carrier is acting as are rates of other carriers, whether common or contract."

It should be noted, in the case at bar, no question has been raised that petitioners' operations would have any adverse effect upon the public use or safety, or condition or maintenance of the highways. The only purpose of the limitation in the contract carrier permit, in the judgment of the Commission, was to protect the common carriers of the state against the incidental and indirect competition of contract carriers. No such authority or power has been granted the Commission, nor can such power be implied.

We therefore hold the Commission was without jurisdiction to place the limitation in the contract carrier permit which required petitioners' "rates to be at a level of common carrier rates."

It should be noted here that the Commission made an attempt to justify their action before this Court on the ground there was no clear showing that the petitioner was a contract motor carrier but may have been a common motor carrier. The Commission cannot impeach its own decision in order to justify the limitation. They issued petitioners a contract carrier permit and cannot now assert that the petitioners may be a common carrier. Meyer v. Senner, 89 Ariz. 282, 361 P.2d 542 (1961).

The portion of the Opinion and Order, Decision No. 35120 reading "rates to be at a level of common carrier rates" is void and petitioners' permit No. 6072 is ordered modified consistent with this opinion.

LOCKWOOD, V. C. J., and STRUCKMEYER, BERNSTEIN and SCRUGGS, JJ., concur.