[Criminal No. 647. Filed February 7, 1927.]

[252 Pac. 1011.]

STATE, Appellant, v. M. M. SMITH, Respondent.

Mr. Arthur T. La Prade, County Attorney, and Mr. Charles A. Carson, Jr., Deputy County Attorney (Mr. Lin H. Orme, Jr., of Counsel), for the State.

No appearance for Respondent.

ROSS, C. J.—This is an appeal by the state from an order sustaining a demurrer to an information charging the defendant with "operating a truck for the transportation of freight and property . . . for hire and compensation, over a certain public highway, to wit, Yuma Road and Christy Road, . . . over which said public highways oné J. M. Carter there

being was then and there operating an auto truck for the transportation of freight under a certificate of convenience and necessity issued by the corporation commission of the state of Arizona, without and before the said M. M. Smith first obtaining or securing permission from or a certificate of convenience and necessity from the corporation commission. . . . "

The demurrer raised the question as to the sufficiency of the above facts to make out a public offense, and that is the only question before us.

The county attorney of Maricopa county has filed a brief challenging the correctness of the court's ruling, but no one has appeared for the defendant.

It is the contention of the appellant that the information is in the language of the statute and is sufficient under the rulings of this and other courts. If the facts charged against the defendant constitute a public offense, it is because they are denounced as such by the provisions of chapter 130, Laws of 1919, entitled:

"An act providing for the supervision, regulation and conduct of the transportation of persons, freight and property for compensation over the public highways of the state of Arizona by automobiles, jitney busses, auto trucks, stages and auto stages."

Our attention is called to section 4 of said chapter as being in practically the same language as the information, but we are satisfied that we cannot rest our conclusion upon that incident alone. We must look to the whole act.

The ruling of the trial court, as we are made to understand, was based upon the ground that the information failed to show by its allegations, or otherwise, whether the defendant was engaged in the transportation of freight and property as a common carrier, or was engaged in such transportation as a private business. It is the duty of the courts to construe said act if possible to preserve

not only its intention but also its validity. If it be held that the legislature intended to confer on the corporation commission the power to forbid the use of the public highways of the state to private carriers of freight and passengers until and unless such "private carrier submit to the conditions of becoming a common carrier and of being regulated as such by the railroad commission," the law would be unconstitutional. In other words, if the legislation be construed as an attempt to convert a private carrier into a public carrier by the requirement that he first obtain from the corporation commission a certificate of convenience and necessity and conform to the regulations applicable to a common carrier before he may use the public highways, it will amount to a deprivation of his property without due process of law. The legislature cannot by fiat convert a private carrier into a common carrier. *Frost* v. *Railroad Com.*, 271 U. S. 583, 70 L. Ed. 1101, 46 Sup. Ct. Rep. 605; *Michigan Public Utilities Com.* v. *Duke*, 266 U. S. 570, 36 A. L. R. 1105, 69 L. Ed. 445, 45 Sup. Ct. Rep. 191.

However, we think the whole context of chapter 130 evidences an intention upon the part of the legislature to limit and confine its provisions and regulations to common carriers of passengers and freight. Although in many instances where the act mentions the carriers intended to be regulated they are described simply as "corporation, person, firm, or association, their lessees, receivers, or trustees," section 3, which provides for the application for a certificate of convenience and necessity, its contents, and the hearing thereon by the corporation commission, describes such carriers as "common carriers for compensation." Other provisions of the act (sections 5 and 6) are, that the corporation commission is authorized and empowered, among other things, to fix tariffs or rates for such owners, and

to supervise and regulate their relationship with "the traveling and shipping public."

The rule of construction adopted by us has been followed in other jurisdictions. In *State ex rel. Public Utilities Com.* v. *Nelson,* 65 Utah 457, 42 A. L. R. 849, 238 Pac. 237, upon the same question the court said:

"Where the act constituting a common-carrier or public service does not clearly express such element of public use or service, words 'for public use or service' or their equivalent nevertheless are to be understood and implied. *State ex rel. Danciger* v. *Public Service Commission,* 275 Mo. 483, 205 S. W. 36, 18 A. L. R. 754, P. U. R. 1919A·353. That, too, is apparent when looking at the whole act and considering its scope and purpose."

So, we conclude that the information did not state facts that showed defendant to be engaged in the business of a common carrier, and was therefore insufficient to charge an offense under chapter 130, *supra.*

In *Haddad* v. *State,* 23 Ariz. 105, 201 Pac. 847, the defendant, who was operating a "for hire" automobile, was informed against for violating a regulation of the corporation commission fixing fares. In that case we thought it necessary to consider the constitutionality of chapter 130, and in doing so we assumed, as appears from the opinion, that it was intended to apply to common carriers only. Before discussing the proposition we laid down this premise, "that the occupation of common carriers on public streets and highways is a proper subject matter for legislative regulation is well settled," and whatever was thereafter said was in support of that proposition. That Haddad was a common carrier was conceded or not questioned. We did not, as contended by appellant, construe chapter 130 as con-

stitutional when applied to a private carrier. The question was not before us.

From the view we take of chapter 130, the question of the power of the legislature to require private carriers for hire to obtain a certificate of convenience and necessity, before operating on the public highways, is not involved. Doubtless the legislature has power to place such carriers under the control of the corporation commission and confer upon such commission the power to prescribe for them regulations necessary for the public safety and order in respect to their operation upon the highways, and to require them to obtain a license before operating, but not the power to compel them to become public carriers and subject to the same control. *Frost* v. *Railroad Com., supra.*

The judgment of the lower court is affirmed.

LOCKWOOD and McALISTER, JJ., concur.