Argued June 10, affirmed July 15, 1959

## HERTZ CORPORATION *v.* HELTZEL AND SNYDER ET AL

341 P. 2d 1063

*Courtney R. Johns,* Albany, argued the cause and filed a brief for intervenors-appellants.

*Samuel B. Stewart,* Portland, argued the cause for respondent. On the brief were White, Sutherland and White, Portland.

Before McAllister, Chief Justice, and Rossman, Lusk, Warner, Sloan, O'Connell and Crawford, Justices.

SLOAN, J.

This is an appeal from a decree of the circuit court for Marion County which granted plaintiffs' prayer to declare subs. (8) of § 6, ch 488, Oregon Laws 1949, as codified, to be in violation of the Constitution of Oregon and of the United States. The only appellants are the intervenors in the proceedings below. The defendant Public Utilities Commissioner did not appeal.

The section referred to has since been codified as ORS 767.115 and 767.160. Chapter 488, Oregon Laws 1949, was a rather general overhaul of the Motor Transportation Code enacted in 1947. Subdivision (8) of § 6 of the 1949 legislation was an amendment to § 9 of the 1947 Act. Section 9 of the 1947 Act made it unlawful for any person to operate a motor vehicle upon the highways of this state as a common, contract or private carrier without first obtaining a permit from the Public Utilities Commissioner for that purpose. Section 9 also prescribed certain qualifications and limitations not pertinent here. It will be more readable to set forth in full subs (8) of § 6 of the 1949 Act rather than as divided by the codification. The section reads:

> "It shall be unlawful for any person to engage in the business of leasing, renting or otherwise providing motor vehicles for the temporary use of others in the transportation of property, or for

the transportation of persons in vehicles having seating accommodations for more than seven passengers, upon the public highways of this state without first obtaining from the commissioner a permit covering such operation and filing with the commissioner an insurance policy as provided in section 22 (1) of this act. The application for such permit shall be in such form and contain such information as the commissioner may require. Hearing on such application shall be held, and notice thereof given, as provided in section 11 (2) of this act. Such application shall be denied unless the evidence shall, in the judgment of the commissioner, justify the findings provided for in paragraphs (a), (b), (c), (d), (e), (g) and (h) of said section 11 (2); provided, however, that any person engaged in such business on April 1, 1949, shall be entitled to such permit as a matter of course upon filing with the commissioner within 90 days from the effective date hereof application for such permit and upon complying with the other provisions of this act. Every person to whom such a permit is issued shall keep the records and make the reports required of carriers by this act, and shall pay the fees prescribed by section 17 of this act unless provision shall be made, with the approval of the commissioner, whereby such fees shall be paid by the lessee or user of such motor vehicles."

The pertinent paragraphs of § 11(2) above referred to are as follows:

"Upon the filing with him of application for permit to operate as a common carrier, or for the transfer of any such permit, the commissioner shall investigate the application and if the proposed operation is competitive with existing carriers or there is protest against the granting of the permit, shall fix a time and place for a hearing thereon. The commissioner shall cause notice of such hearing to be served upon every person operating in any manner or by any means as a common carrier,

or who has applied to operate as a common carrier in the territory proposed to be served by the applicant and on other interested parties; and any such common carrier or applicant hereby is declared to be an interested party to said proceedings and may offer testimony for or against the granting of such permit. Any other interested party including the public may give testimony at such hearing.

"If the commissioner finds from the record and the evidence that:

"(a) The applicant, if an intrastate operator, is financially responsible and adequately equipped to perform the service proposed;

"(b) That the equipment listed is safe for operation in so far as can be determined at the time of inspection;

"(c) That the operation proposed is in the public interest;

"(d) That the service proposed will not be attended with substantial damage to the highways or danger to other users thereof or to the public;

"(e) That the granting of a permit will not result in the impairment of the ability of existing operators adequately to serve the public;

"\* \* \* \* \* \*

"(g) That the applicant can and will furnish and file the insurance, bond or substitute security or qualify as self-insurer as provided in this act;

"(h) That applicant has agreed to pay the privilege taxes provided for herein, comply with the provisions of this act and obey all of the rules and regulations of the commissioner; then the commissioner, upon compliance by the applicant with the law, and the rules and regulations of the commissioner, shall issue a permit, but unless said findings are so made by the commissioner the application shall be denied or the permit issued with such conditions imposed by the commissioner as will, when complied with, meet the requirements of this act."

We will refer to these sections as the "statute." The vehicles involved in this proceeding are all trucks. The plaintiff, and, we assume, intervenors do not rent passenger vehicles as defined in the statute. The trucks were rented without drivers.

Plaintiff requires no introduction; nor should it be necessary to identify its business with the statute just quoted. The intervenors are engaged in the motor vehicle rental business in various communities of the state. Their interest in this proceeding is perhaps best explained by a quote from their counsel's argument here:

> "* * * The intervenors are all named here as appellants. There are several of them, and [they] got permission to intervene in this particular proceeding and they, of course, are vitally interested. They wanted to keep the regulation and their permits and have this little more or less—I should say—a monopoly in some of these little towns. They had a vital interest in this business."

■ The statement just quoted poses the issues we deem it necessary to consider. Do the needs of the public require the legislatively imposed monopoly attempted to be imposed by this enactment? Is the business of renting motor vehicles so affected with public interest or right as to sustain the validity of the attempted regulation thereof? We are told that the answer to these queries is to be found in § 1 of the Fourteenth Amendment to the Constitution of the United States and the numerous decisions of the courts construing statutes alleged to have violated that amendment.

The only record before us consists of the pleadings filed below. The original defendant, Heltzel, filed a demurrer to plaintiff's complaint. The inter-

venors filed a complaint in intervention and an answer. However, the case was submitted to the trial court upon the demurrer. The court overruled the demurrer, and the decree of the court was entered upon that pleading alone. The intervenors did not seek leave to plead over, nor does the record reflect any effort on their part to seek the trial court's consideration of the facts alleged in the intervenors' complaint or answer. They appeal from the decree overruling the demurrer and allowing the relief prayed for in the complaint. The only facts before us, therefore, are the allegations of plaintiff's complaint.

The material allegations reveal that:

"(a) Plaintiff's truck rental business consists of acquiring, conditioning, servicing and renting to others for their temporary use a number of small late model trucks which are used by the lessees in hauling for themselves various commodities such as produce, household goods, fuel, fertilizer, and other materials and supplies in small lots. Three of such trucks are flat bed vehicles, four are panel delivery trucks and thirteen are vantype trucks. All such trucks are fully insured for the protection of the public and are rented at various hourly charges dependent upon the size of the truck. The lessees of such trucks operate on the public highways and on private drive or road ways as the occasion may require.

"(b) The majority of plaintiff's partons [sic] are individuals living in the Portland, Oregon area. Occasionally, trucks are rented for emergency use to various businesses in the Portland area. The service offered by plaintiff is a local community service to meet local needs for vehicles for the every day type of hauling which people desire to do for themselves."

Other allegations specify wherein plaintiff contends

the statute is invalid and that the commissioner is attempting to enforce the statute as against plaintiff. The only issue presented by the demurrer and considered by the court and argued here is the constitutionality of the statute. It is not contended the complaint is insufficient for any other reason.

As we have mentioned, we will limit our consideration to the public need for the kind of regulation proposed by this statute. The plaintiff concedes that its business is properly subject to police regulation requiring adequate safegards for safety, for the imposition of licenses and taxes and for reasonable security to the public for any liability incurred in the operation of a rental vehicle. In fact, such legislation in the form of an ordinance adopted by the city of Portland has been sustained by this court (*Covey Garage v. Portland,* 157 Or 117, 70 P2d 566), and by the Supreme Court of the United States (*Hodge Drive-It-Yourself Company v. Cincinnati,* 284 US 335, 76 L ed 323, 52 S Ct 144.) Other state courts have sustained similar requirements. See annotation at 7 ALR2d 456.

There is no basis here to find that the rental of trucks by plaintiff constitutes any infringement, or threatened infringement, of the regulation or operation of common, contract or private carriers. In fact, it is significant that no such carrier has attempted to intervene in this proceeding in any capacity. There is no fact or allegation from which we could infer that any such rental trucks are providing material or unlawful competition to any form of transportation for hire otherwise regulated by the Motor Transportation Code. We could not be convincingly told that any violation of that Code by a lessee of plaintiff's trucks could not be adequately prohibited by the commissioner.

The violation of the Code restrained by *Heltzel, P.U.C. v. O. K. Transfer Co.*, 215 Or 8, 330 P2d 510, did not require the provisions of the statute here in question to make enforcement possible. ORS 767.465 provides the commissioner with power to seek restraint of any person, including a lessee, who is "engaged or about to engage in" violation of the Motor Transportation Code.

The only remaining function the statute could perform is the creation of a monopoly. It appears that we can best express our concept of this object of this statute by an example: We are not informed and do not know how many persons are engaged in this business within the city of Portland. We assume there are more than one. In any event if some other person would desire to engage in the business in that community such person would, by this statute, be required first to obtain the required permit. To do so he would be obliged to show: "That the operation proposed is in the public interest;" and "That the granting of a permit will not result in the impairment of ability of existing operators adequately to serve the public." Paragraphs (c) and (e), § 11(2), ch 488, Oregon Laws 1949. This is the equivalent of a certificate of convenience and necessity. Thus, if the commissioner would find that the addition of another such business within that city would interfere with the "monopoly" of those already in the business he could decline the permit. It is the equivalent of saying that Mr. John G. Public has a vital interest in protecting the business of those engaged in renting motor vehicles; that if all should go out of business the public convenience would, thereby, substantially suffer.

We pause here to mention that the statute imposes no limitation or restraint on the commissioner as to

the area within which competition should not be permitted. For all the requirements of the statute, he could refuse a permit in Pendleton on the basis that the vehicles to be rented would compete with a similar business in La Grande.

We believe it unnecessary to analyze or add to the many cases that have considered the characteristics of the public interest or need that will sustain an act of this nature. The subject has been treated numberless times and certainly nothing we could say here would add to the learning on the subject. Two of the cases most cited are *Munn v. Illinois,* 94 US 113, 24 L ed 77, and *Wolff Packing Co. v. Court of Industrial Relations,* 262 US 522, 67 L ed 1103, 43 S Ct 630. A statement in a somewhat kindred case of *Frost Trucking Co. v. R. R. Comm.,* 271 US 583, 70 L ed 1101, 46 S Ct 605, 47 ALR 457, is much quoted. "The naked question which we have to determine, therefore, is whether the state may bring about the same result by imposing the unconstitutional requirement as a condition precedent to the enjoyment of a privilege, * * *." In that instance the privilege, as here, was the use of the state's highways. The court held an attempt to regulate a business under the guise of regulating the use of the highways violated constitutional guaranties. These and similar cases provide us with the applicable rules and the tests to be applied. We need apply these to the statute before us.

A specific statute very similar to ours has been considered by the Supreme Court of Pennsylvania in *Hertz Driveurself Stations, Inc. v. Siggins,* 359 Pa 25, 58 A2d 464, 7 ALR2d 438. The opinion gives thorough consideration to the issues presented here and penetratingly analyzes the kind, extent or nature

of a public interest which must be served to sustain regulation of business or property or person. It concluded that the Pennsylvania Act was not in the public interest and was invalid. Some of the more pertinent language of that decision deserves emphasis:

"* * *. There is no peculiarly close relationship between the public and the appellant's business; and there are no implications that the public has a right to expect that the leasing service will be available at all times to any one demanding it. The business of leasing motor vehicles without drivers is just as private as the business of selling automobiles whether the latter be by the manufacturers or by sales agents. In either instance (i.e., lease or sale of a motor vehicle) the transaction is a matter for private negotiation and of private contract.

"The public interest, where such is essential, before the legislature may, in an exercise of the State's police power, subject private property to public regulation and control must be 'a legal interest' (veritably, 'a right') and not merely a desire born of personal concern, convenience or economy covetous of the use of another's property. [58 A2d 472.]

"* * * * * *

"* * *. As was said by the Supreme Court in Producers Transportation Company v. Railroad Commission, 251 U.S. 228, 230, 231, 40 S. Ct. 131, 64 L.Ed. 239, making a public utility of a private property by legislative fiat 'would be taking private property for public use without just compensation, which no state can do consistently with the due process of law clause of the Fourteenth Amendment.' [58 A2d 474.]

"* * * * * *

"While, in part, the Act purports to be a regulation of the use of the highways, save for the one provision requiring insurance or proof of financial

responsibility, it affects no reciprocal highway purpose reasonably commensurate with the business regulation which it seeks to impose. It neither prescribes nor authorizes any restrictions or limitations upon the number of motor vehicles that persons engaged in the business may maintain at any one time for leasing; it lays no charge or burden, progressively or otherwise, upon any increase in the number of such vehicles from time to time; and it places no limitation upon the operation of such vehicles on the highways anywhere at any time by the lessees thereof. [58 A2d 476.]

"* * * * *

"There seems to be a mistaken notion in some quarters, because a monopoly for the service of a public need automatically carries with it liability to regulation and control, that, conversely, subjection to public regulation and control impliedly embraces the grant of a monopoly of the particular service. Nothing could be further from the law's contemplation. The stifling of competition through an exercise of the State's police power is never justifiable except that it be done, and actually be, in the public interest. As the highest attribute of government (Salus populi est suprema lex), the police power must, at all times, be exercised with scrupulous regard for constitutionally guaranteed private rights. It can be properly exercised only in the public welfare; and, if exercised otherwise, the exertion will be stricken down as a perversion of the sovereign power." (58 A2d 478.)

The Supreme Court of Michigan has twice considered a somewhat different attempt to impose public transportation regulation upon the lessors of motor vehicles. *People v. Hertz Driveurself Stations, Inc.,* 338 Mich 139, 61 NW2d 113, and *Fry Roofing Co. v. Pub. Serv. Comm.,* 338 Mich 544, 61 NW2d 783. In each of these cases the court held that the lessors of

motor vehicles are not engaged in the transportation of people or property for hire.

The Supreme Court of Washington in two decisions has held that a person engaged in the leasing or rental of motor vehicles is not subject to the Motor Vehicle Act of that state. *State v. Bee Hive Auto Service Co.,* 137 Wash 372, 242 P 384, and *State v. Hertz Drive-Ur-Self Stations, Inc.,* 149 Wash 479, 271 P 331. Neither of these cases, however, involved statutes expressly directed at this type of business, but were concerned with alleged violations of the Act for failure to obtain a permit to operate a public carrier.

In *State v. Condry,* 139 W Va 827, 83 SE2d 470, the court had for consideration a statute somewhat similar to the one we are now considering. In passing upon the attempt of the legislature of that state to classify the lessors of motor vehicles as public carriers the court said: "As hereinabove stated, we think this is an effort by the legislature by an enactment of a series of statutes to classify relators as either common or contract carriers, thus making their business subject to regulation. This cannot be done by legislative fiat." The particular act was held unconstitutional.

Other attempts to classify or regulate the ownership of rental vehicles within the scope of public carrier acts have apparently been uniformly rejected by the courts. *State v. Dabney,* 176 Ark 1071, 5 SW2d 304; *People v. Heckman Trucking Co.,* 277 NY 480, 14 NE2d 801; *Armstrong v. Denver Saunders System Co.,* 84 Colo 138, 368 P 976. Other cases are collected in an annotation at 7 ALR2d 456, supra. As previously mentioned, this annotation considers the entire scope of the regulation of the business of renting motor vehicles.

We have found only one case that would appear to sustain the position of intervenors. *Louisville Taxicab & Transfer Co. v. Blanton,* 305 Ky 179, 202 SW2d 433, 175 ALR 1329. The court there held that the legislature could classify lessors of motor vehicles as contract carriers for hire. The court said of the Kentucky statute: "This section makes the owner of any vehicle for hire, or one engaged in the leasing of such vehicles, for transportation of person or property for compensation on the public highway (except one who transports his own property), an operator for hire." 175 ALR 1331. Our statute does not limit the requirements thereof to those who lease only to those who will transport property for hire. Instead, the statute expressly provides that it shall apply to any person who leases or rents to another a vehicle for the transportation of person or property. There is no exception, as in the Kentucky statute, avoiding the application of the statute to a lessee who transports his own property. Regardless of this distinction, however, we consider the Pennsylvania case, *Hertz Driveurself Stations, Inc. v. Siggins,* supra, to have more fully analyzed the issues, the decisions of the courts and the fundamental problem of the regulation of property and contract.

We note with interest Part 207 of the Regulations of the Interstate Commerce Commission. This Part of the Regulation is entitled "Lease and Interchange of Vehicles." We otherwise learn (*American Trucking Assns., Inc. et al. v. United States,* 344 US 298, 97 L ed 337, 73 S Ct 307) that these particular regulations were the subject of long and extensive hearings before their adoption. These Regulations specifically exempt from the restrictions imposed the lease of equipment without drivers from business concerns

whose principal business is the leasing of equipment without drivers for compensation.

■ We agree with the Pennsylvania court that there is no more basis to control the business of renting vehicles than there would be in an attempt to apply a similar control to those who sell motor vehicles. Neither a seller nor lessor would bear any responsibility for any transportation of property or persons for hire by the buyer or lessee. Despite the strong presumption of validity (*Fox v. Galloway,* 174 Or 339, 148 P2d 922), we think this statute is an unwarranted invasion of private business. We can find no justification for creating and regulating the form of monopoly here contemplated.

We dare say that the public has more interest and concern in maintaining adequate medical service than in having available a supply of rental vehicles. Nevertheless, we believe no one would contend that the Board of Medical Examiners should be given the power to decide how many doctors might practice in any given city. The same consideration could equally be applied to grocery stores and numerous other forms of public service for which the public has definite need. The desire of some members of a given industry, business or profession to achieve a "little monopoly" could not be made more palatable by asserting it is in the "public interest," even though the legislature might be induced to say so.

We must reluctantly conclude that subs. (8) of § 6, ch 488, Oregon Laws 1949, as codified, must be held to be unconstitutional and, therefore, void.

The decree is affirmed.

WARNER, J., sat in the argument of this case but did not participate in its determination.