388 P.2d 155

John VISCO, and Arizona Mill Supply, Inc., a corporation, Appellants,

v.

STATE of Arizona ex rel. Robert PICKRELL, Attorney General, Appellee, Downtown Merchants Association, Intervenor.

No. 7679.

Supreme Court of Arizona,

En Banc.

Dec. 26, 1963.

Rehearing Denied Jan. 28, 1964.

R. G. Langmade, Phoenix, for appellants.

Powers & Rehnquist, Phoenix, for intervenor.

Robert Pickrell, Atty. Gen., for appellee.

WILLIAM W. NABOURS, Superior Court Judge.

This action was brought in the lower court by the Attorney General of the State of Arizona at the request of the Arizona Corporation Commission. The complaint alleged that the appellants Visco, and Arizona Mill Supply, Inc., a corporation, were either operating as a common carrier or contract carrier of property without

having first obtained the necessary certificate or permit from the Corporation Commission. It asked that appellants be enjoined from continuing such operations.

The appellants have for many years engaged in the business of scavenging. Visco is the president and general manager of Arizona Mill Supply. It has a plant in which it processes, classifies and reclaims for sale and shipment certain waste materials discarded by the merchants, principally paper and cardboard.

The appellants operate trucks for the purpose of picking up cardboard and paper and transporting it directly to a purchaser or to the appellant's plant for processing. In this operation it is conceded by the State that appellants are operating as private carriers and are not subject to any control by the Corporation Commission. Appellants have also entered into agreements with various merchants to clean up the alleys when they haul away this material and have rented large bins to the merchants for the storage of this material until picked up by appellants. This bin rental and cleaning up operation now constitute a large part of the business of appellants in addition to the sale of the salvageable material. The State admits that appellants have the right to pick up salvageable cardboard and paper, to clean the alleys in hauling away this salvageable material and have the right to rent bins to the merchants. However, the State contends appellants

have not limited their activities to such salvage operations but have now progressed to the point where they will haul trash, refuse or garbage for the merchants directly to the dump in the same manner as the certificated carriers.

Appellants deny this statement and allege that all of their operations are as a private carrier, that all materials are given to them by the merchants and are then transported by them to the dump as their own property.

Because of the action of the Corporation Commission as applied to the businesses of this state, a detailed examination of the facts and principles of law applicable is necessary. In 1955 appellant Arizona Mill Supply applied for a Certificate of Convenience and Necessity from the Corporation Commission to engage in the business of a common motor carrier of trash and garbage. That permit was not granted and in 1956, appellant Visco organized a corporation known as Benz Disposal Company for the purpose of obtaining a contract carrier's permit to haul for Arizona Mill Supply. In late 1956 a permit "authorizing the transportation of Number 2 dry trash over all highways of the City and County within a 25 mile radius of the Phoenix City Hall" was granted. In 1957, the contract carriers' permit of Benz Disposal Company was canceled. Benz, and the two appellants in this action were ordered to cease and desist common carrier operations by motor vehicle. This order was appealed to the Superior

Court of Maricopa County but later the appeal was abandoned.

In 1959, Arizona Service Company, a certificated common carrier of trash and other such items of "property", filed a complaint before the Corporation Commission against Benz, it appearing that Benz had Visco. At the hearing no action was taken against Benz, it appearing thta Benz had forfeited or abandoned its corporate charter, but the Commission found that Visco was operating as a common carrier of property and ordered him to cease and desist such operations. Arizona Mill Supply was not a party to that action and no action was taken against it. Visco filed a petition for rehearing and upon its denial thereafter appealed to the Superior Court of Maricopa County. Judgment was entered setting aside the Order of the Corporation Commission. This judgment was not appealed.

In June 1960, Arizona Service Company filed a complaint before the Corporation Commission alleging that Arizona Mill Supply had for six months prior thereto been acting as a common motor carrier of "property" in the transportation of garbage and trash as defined by the Commission. An Order to Show Cause was issued by the Superior Court and a hearing date set, and on September 9, 1960, a permanent Writ of Prohibition was issued to the Commission ordering it to "desist and refrain from assuming jurisdiction, by directing Arizona Mill Supply, Inc., a private carrier, to appear and show cause why its operations should not cease and desist, or to undertake and assume jurisdiction to determine the legal status of the Arizona Mill Supply, Inc." That judgment is now on appeal to this Court as Cause No. 7227, and is consolidated for hearing with this matter.

In late 1960, Garbage Service Company, Inc. and Arizona Service Company, certificated common carriers of trash and similar property, filed complaints in the Superior Court of Maricopa County. Both cases are now awaiting trial.

On September 25, 1961, the appellee, State of Arizona, filed this action against the appellants, John Visco and Arizona Mill Supply, Inc. As its outcome appellants were enjoined from operating as common motor carriers of property by transporting for compensation trash, garbage, refuse, paper, cardboard or any other such property on the public highways in and about the City of Phoenix, Arizona, and from directly or indirectly collecting or receiving any money or thing of value whatever from cleaning up, loading or transporting by motor vehicle over said public highways any trash, garbage or refuse, except paper or cardboard. The decree expressly declared that nothing contained therein "shall be construed to affect or impair in any way the transportation by

appellants over the public highways of material, such as paper and cardboard, which is actually salvaged by appellants and used or sold in their private business operations."

Throughout all of these proceedings the crux of the controversy between Visco and Arizona Mill Supply on the one hand and the Arizona Corporation Commission on the other has been the question whether Arizona Mill Supply has been operating as a private carrier as it claims, or as a common or contract carrier of property by motor vehicle as claimed by the Commission.

First, was the action properly brought by the Attorney General?

The Attorney General is acting under A.R.S. § 40–422 which provides in part:

"When the commission is of the opinion that a public service corporation is failing or about to fail to do anything required of it by law * * * it shall direct the attorney general of the state to commence a proceeding * * *."

This action under § 40–422 is an appropriate one in which to decide the question of whether the defendant is a public service corporation. The "law" alleged to be violated may be any law the Corporation Commission is empowered to enforce. As here used, "law" includes more than the Public Service Corporation Act. The situation is essentially the same as in Corporation Commission v. Southern Pac. Co., 67 Ariz. 87, 191 P.2d 719, where an action was brought by private interests under the then § 69–249 (now § 40–254) to set aside a commission order under § 66–506. (now 40–607)

It would be well to commence this decision by explaining in detail why the statute A.R.S. § 40–607 does not require a certificate of public convenience and necessity of any except "common motor carriers." In this case the appellant had neither a motor carrier's permit under A.R.S. § 40–607 or § 40–608. As a private carrier he needs neither, (A.R.S. § 40–601(8)). It should be pointed out that the certificate under § 40–607 is in fact a grant of monopoly, and that no competitor can enter the field unless the certificate holder "will not provide service." The certificate under A.R.S. § 40–608, however, is not a grant of monopoly, and, if the law is properly administered, new persons can enter the field of contract motor carriage. The monopolistic feature formerly in this section was eliminated by Laws 1949, Ch. 106, Sec. 1.

In his complaint the Attorney General confused the issues by charging appellants had acted as "common contract carriers", a phrase unknown to the statutes which use "contract carrier" and "common carrier" as contrasting classifications with different

certificates required. The court below found appellants to be operating as a "common motor carrier" and enjoined them from operating without a certificate of convenience and necessity, meaning one under A.R.S. § 40–607. This was the certificate which could not possibly be secured. If a certificate under A.R.S. § 40–608 had been the one required, presumably, if the law is properly administered, it would have been granted upon application. Consequently, what is said herein does not apply to A.R.S. § 40–608, and no opinion is intended to be expressed relating to that statute. The "contract carriers" covered by that section, are for the purposes of most of the constitutional decisions discussed herein, included within the term private carriers, and the regulation provided in A.R.S. § 40–608, if not administered as to be in fact a cloak for monopoly, is an example of the type of regulation to which any uses of the highways may be subjected.

When read in the light of the applicable constitutional limitations, A.R.S. § 40–607 is not so broad a statute as it might appear to be when read alone, nor is the constitutional classification of "private motor carrier" restricted to those carriers who meet the definition which appears in A.R.S. § 40–601(8).

Three basic powers of government are involved in the solution of the questions here presented. First, there is the power to adopt economic regulations, particularly to fix prices, for the "public callings". The limitations upon this power imposed by the Fourteenth Amendment were discussed in detail by Chief Justice Waite in Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77. This was a forward looking decision. Specifically, the power of a state to add grain elevators to the class of callings subject to economic regulations by the state was affirmed. But it is not an affirmance of the power of the state legislatures to arbitrarily and capriciously add to the list of callings which may be subjected to economic regulation, and limits its "power" to callings "affected with a public interest". Time has not eroded the force of Munn v. Illinois, supra.

Second, there is the "police power". Sometimes the "police power" is so broadly defined as to include almost all the powers of government. For purposes of distinction in this decision, "police power" is to be taken to mean the enactment of law designed to secure "public health, safety and general welfare". Edwards v. State Board of Barber Examiners, 72 Ariz. 108, 231 P.2d 450; State v. Borah, 51 Ariz. 318, 76 P.2d 757, 115 A.L.R. 254.

Third, there is the power to grant monopolies. "Monopolies" were anciently granted by royal prerogative. They were granted to the King's favorites and with no pretence at serving the public welfare. In Charles River Bridge v. Warren Bridge, 36 U.S. 420, 567, 11 Pet. 420, 9 L.Ed. 773, the

United States Supreme Court denounced monopolies in the following terms:

"A monopoly is that which has been granted without consideration, as a monopoly of trade, or of the manufacture of any particular article, to the exclusion of all competition. It is withdrawing that which is a common right from the community, and vesting it in one or more individuals, to the exclusion of all others. Such monopolies are justly odious, as they operate not only injuriously to trade, but against the general prosperity of society."

It might be doubted if the power to grant monopolies could survive at all in a free society. Many states have specific prohibitions in their state constitutions.[1] In its modern form the power to grant monopolies is exercised through the granting of a certificate of public convenience and necessity to the first, or favored applicant, and in denying a certificate to all others. That is what the Corporation Commission is attempting to do here.

The modern era of regulation of the transportation and related industries began without inclusion of an element of monopoly. The original Interstate Commerce Act of February 14, 1887, Stat. 379, contained no reference to a certificate of public con-

venience and necessity. Both competition and regulation were felt to be necessary to the adequate protection of the public.

The certificate of public convenience and necessity was first introduced into the statute by the Transportation Act of February 28, 1920, 49 U.S.C. § 1(18). In explanation and justification of this change of policy the Supreme Court of the United States said in Texas & Pacific Ry. Co. v. Gulf, C. & S. F. Ry. Co., 270 U.S. 266, 277, 278, 46 S.Ct. 263, 266, 70 L.Ed. 578:

"[Congress] recognized * * * that the building of unnecessary lines involves a waste of resources, and that the burden of this waste may fall upon the public; that competition between carriers may result in harm to the public, as well as in benefit * * *. The act sought, among other things, to avert such losses."

Clearly, where competition means wasteful duplication of physical investments, the legislature is free to prohibit it. But a more difficult question is presented where this policy justification is absent.

Congress adopted the requirement of a certificate of public convenience and necessity in the Motor Carrier Act of 1935, 49 Stat. 551, now 49 U.S.C. §§ 306, 307. This Act recognized the similar state legislation

1. The Arizona Constitutional provision on the subject, Art. 14, § 15, A.R.S., is cast in the form of a mandatory direction to the legislature to pass anti-trust and anti-

monopoly laws. It is not, in terms, a prohibition against a grant of a monopoly by the State.

and the validity of certificates of public convenience and necessity granted by the states in the intra-state field.

With one exception, the Arizona statutes here involved, and the Federal statutes are similar. Under the Federal statute, the Interstate Commerce Commission is directed to consider only the public interest. It may, but need not, permit competition. Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed. 2d 207; Schaffer Transp. Co. v. United States, 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117. Under the Arizona statute, A.R.S. § 40–607, subd. C, " * * * the commission may * * * issue a certificate only when the existing common motor carrier * * * will not provide service deemed satisfactory by the commission." Thus, Arizona has adopted completely the "regulated monopoly" theory, and it has been consistently applied by this Court, Tucson Rapid Transit Co. v. Old Pueblo Transit Co., 79 Ariz. 327, 289 P.2d 406 and cases cited therein.

The state may constitutionally apply the "regulated monopoly" theory in all of the instances in which it has previously been upheld. But all of these were "common carrier" cases, no matter what definition of common carrier is adopted.

But can the state expand its definition of "common carrier" to include a business such as that of appellant which is essentially that of private carrier, and grant a monopoly? The answer under the Fourteenth Amendment to the Federal Constitution is emphatically "No". Frost Trucking Co. v. R. R. Commission, 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101.

The requirement of a certificate of convenience and necessity of motor carriers first appeared in the states. It appeared in California in 1919 and was in the original Arizona Act of the same year. The California requirement was taken to the United States Supreme Court, and, as noted above was held to be unconstitutional.

"Thus, it will be seen that, under the act as construed by the state court, whose construction is binding upon us, a private carrier may avail himself of the use of the highways only upon condition that he dedicate his property to the business of public transportation and subject himself to all the duties and burdens imposed by the act upon common carriers. In other words, the case presented is not that of a private carrier, who, in order to have the privilege of using the highways, is required merely to secure a certificate of public convenience and become subject to regulations appropriate to that kind of a carrier, but it is that of a private carrier, who, in order to enjoy the use of the highways, must submit to the condition of becoming a common carrier

and of being regulated as such by the Railroad Commission. The certificate of public convenience, required by section 5, is exacted of a common carrier, and is purely incidental to that status. The requirement does not apply to a private carrier qua private carrier, but to him only in his imposed statutory character of common carrier. Apart from that signification, so far as he is concerned, it does not exist.

"That, consistently with the due process clause of the Fourteenth Amendment, a private carrier cannot be converted against his will into a common carrier by mere legislative command, is a rule not open to doubt, and is not brought into question here. It was expressly so decided in Michigan Commission v. Duke, 266 U.S. 570, 577, 578, 45 S.Ct. 191, 69 L.Ed. 445, 36 A.L.R. 1105." 271 U.S. at 592, 46 S.Ct. at 606.

It should be noted that the California act was more favorable to the trucker than the Arizona Act involved here. In Frost, apparently the trucker could have secured a certificate if he had consented to the imposition of unconstitutional conditions. Here, the appellant could not secure a certificate at all, because of the certificates previously granted to his competitors.

The Arizona statute first came before this Court in Haddad v. State, 23 Ariz. 105, 201 P. 847. The Act was generally upheld.

The court relied upon many authorities, including Munn v. Illinois, supra. But, the carrier protected against competition was a bus line, a "common carrier" under any definition, and referred to in the orders of the commission and in the opinion as a "regular stage line." Furthermore, the protection against competition involved took the form, not of prohibiting cabs from taking passengers over the stage route, but of requiring them to charge a higher fare. This was a rate decision not a monopoly decision.

The application of the Arizona Motor Carrier Act to a private carrier came before this Court in State v. Smith, 31 Ariz. 297, 252 P. 1011. The defendant there was charged with "operating a truck for the transportation of freight and property * * * over a certain public highway * * * without * * * a certificate of convenience and necessity", in the language of the statute. The trial judge held that the facts charged against the defendant did not constitute a public offense. This ruling was upheld.

"It is the duty of the courts to construe said act if possible to preserve not only its intention but also its validity. If it be held that the Legislature intended to confer on the corporation commission the power to forbid the use of the public highways of the state to private carriers of freight and passengers until and unless such 'private carrier submit

to the conditions of becoming a common carrier and of being regulated as such by the railroad commission,' the law would be unconstitutional. In other words, if the legislation be construed as an attempt to convert a private carrier into a public carrier by the requirement that he first obtain from the corporation commission a certificate of convenience and necessity and conform to the regulations applicable to a common carrier before he may use the public highways, it will amount to a deprivation of his property without due process of law. The Legislature cannot by fiat convert a private carrier into a common carrier. Frost v. Railroad Commission, 271 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101; Michigan Public Utilities Commission v. Duke, 266 U.S. 570, 45 S.Ct. 191, 69 L.Ed. 445, 36 A.L.R. 1105.

"However, we think the whole context of chapter 130 evidences an intention upon the part of the Legislature to limit and confine its provisions and regulations to common carriers of passengers and freight." 31 Ariz. at 299–300, 252 P. at 1011–1012.

■ Consequently, the legislation here involved is constitutional only if read in the light of Frost v. Railroad Commission, supra. A certificate of convenience and necessity cannot be required of a private carrier, and "private carrier" means a "private carrier" as the term is commonly understood and has been used by the courts in interpreting the State and Federal Constitutions, not as defined by the legislature or the Corporation Commission.

Decisions of the past 35 years have not cast doubt on these fundamental principles. The cases where there was no question but that the carrier was a "common carrier" or a "public service corporation" are not helpful here. There is no question that the certificate of convenience and necessity could properly be required, and, on the theory of "regulated monopoly", denied, to this class of carrier for the sole benefit of an established competition. Tucson Rapid Transit Co. v. Old Pueblo Transit Co., supra. But where the business involved was not that of a common carrier, this Court has consistently enforced the rule of the Frost and Smith cases.

In General Alarm v. Underdown, 76 Ariz. 235, 262 P.2d 671 the issue was whether a certificate of convenience and necessity could be required of a corporation maintaining an emergency signal and fire alarm system. In holding that it could not, and in construing Sections 2 and 10 of Article 15 of the Arizona Constitution, this Court said:

"To be a public service corporation, its business and activities must be such as to make its rates, charges, and methods of operation a matter of public concern. It must be, as the courts express it, clothed with a public interest to the

extent clearly contemplated by the law which subjects it to governmental control. Free enterprise and competition is the general rule. Governmental control and legalized monopolies are the exception and are authorized under our constitution only for that class of business that might be characterized as a public service enterprise. The theory is that the right to public regulation and protection outweighs the customary right of competition. If the public contact with a business is such that its necessities and convenience can be better served through governmental supervision and controlled monopoly, thereby eliminating customary competition, the state may exercise its police power to that end. Such invasion of private right cannot be allowed by implication or strained construction. It was never contemplated that the definition of public service corporations as defined by our constitution be so elastic as to fan out and include businesses in which the public might be incidentally interested or businesses that might incidentally transmit messages in furtherance of the main object of the enterprise that otherwise could not be so characterized. The public has some interest in all business establishments but that interest must be of such a nature that competition might lead to abuses detrimental to the public interest. The public interest contemplated depends on the nature of the business, the means by which it touches the public, and the abuses which may reasonably be anticipated if not controlled. Chas. Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 43 S.Ct. 630, 67 L.Ed. 1103, 27 A.L.R. 1280. Our constitution must and easily can be interpreted in harmony with these principles. So construed, it is only in the interest of the convenience and necessity of the public, of the nature and to the degree herein stated, that a business may be supervised and controlled, rates fixed or monopolies granted." 76 Ariz. at 238–239, 262 P.2d at 672–673.

In that case the private service rendered was directly connected with the public obligation to put out fires. Here appellant's operations are directly connected with the public obligation to protect health and to collect trash properly. In neither case are the corporations "public service corporations" in the sense that would permit the establishment of a monopoly.

The Pennsylvania Court in Hertz Drivurself Stations, Inc. v. Siggins, 359 Pa. 25, 58 A.2d 464, 7 A.L.R.2d 438, analyzed the problem as has been done here, and considered police power and the power to regulate public callings as basically separate powers. The court concluded:

"There seems to be a mistaken notion in some quarters, because a monopoly

for the service of a public need automatically carries with it liability to regulation and control, that, conversely, subjection to public regulation and control impliedly embraces the grant of a monopoly of the particular service. Nothing could be further from the law's contemplation. The stifling of competition through an exercise of the State's police power is never justifiable except that it be done, and actually be, in the public interest. As the highest attribute of government (Salus populi est suprema lex), the police power must, at all times, be exercised with scrupulous regard for constitutionally guaranteed private rights. It can be properly exercised only in the public welfare; and, if exercised otherwise, the exertion will be stricken down as a perversion of the sovereign power." 359 Pa. at 50–51, 58 A.2d at 478.

This Court has already cited Hertz Driv-urself Stations, Inc. v. Siggins, supra, with approval in Mecham Pontiac Corp. v. Williams, 94 Ariz. 144, 382 P.2d 558, wherein this Court reached the same result reached by the Pennsylvania court, that certificates of convenience and necessity could not be required of rental car operators on grounds of statutory construction.

The same question arose in Oregon, and the same result reached, in Hertz Corp. v. Heltzel, 217 Or. 205, 341 P.2d 1063. The Oregon court concluded:

"We dare say that the public has more interest and concern in maintaining adequate medical service than in having available a supply of rental vehicles. Nevertheless, we believe no one would contend that the Board of Medical Examiners should be given the power to decide how many doctors might practice in any given city. The same consideration could equally be applied to grocery stores and numerous other forms of public service for which the public has definite need. The desire of some members of a given industry, business or profession to achieve a 'little monopoly' could not be made more palatable by asserting it is in the 'public interest,' even though the legislature might be induced to say so." 217 Or. at 218; 341 P.2d at 1069.

In Arizona Corporation Com'm v. Reliable Transp. Co., 86 Ariz. 363, 346 P.2d 1091, the question was whether appellants were properly granted "contract motor carrier" certificates by the corporation commission under § 40–608. The Court held that they were common carriers, who should have certificates, if at all under § 40–607. In fact, such certificates under § 40–607 were not available as appellees already held certificates. The case contains an extended

discussion of the meaning of the phrase "common carrier", and holds that the truckers there involved were common carriers.[2] After a change in its method of operation so that it served only one oil company, one of the unsuccessful appellants in the Reliable case was held to be entitled to a "contract carriers" certificate in Cantlay & Tanzola, Inc. v. Senner, 92 Ariz. 63, 373 P. 2d 370.

In any event, oil trucking is very different from appellant's trash hauling. Oil is one of the commodities specifically mentioned in Ariz.Const. Art. 15, Sec. 10. Railways and pipelines are also specially mentioned. Trucks are not, but they have been held to be included where they exercise common carrier functions such as were supplied by railways at the time of the adoption of the Constitution. Corporation Comm. v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443; Ariz. Corp. Comm. v. Reliable Transp. Co., supra. This section would be relevant only if all trucks were held to be common carriers, and the trash here involved were held to be "other property". Obviously all trucks are not common carriers. It is the use to which they are put which determines their status. General Alarm v. Underdown, supra. Nor is the trash hauled by appellant

"other property", as that phrase is used in the constitution and in relation to carriers. Its character as "property" in this case was lost when the owner determined to throw it out. This trash is totally unlike all other property hauled by either common or private carriers. It has been abandoned.

Appellant's industry was before this Court in Meyer v. Senner, 89 Ariz. 282, 361 P.2d 542. In that case a commission order to cease and desist from operating in an area where "another party holds a Certificate of Convenience and Necessity to haul garbage" was reversed. The case was a clear one.

> "He [petitioner] has but one contract to haul for the United States Government and in no way holds himself out as a common carrier for the public." 89 Ariz. at 284, 361 P.2d at 544.

With only one customer, appellant in the Meyer case could not be a common carrier under A.R.S. § 40–607. He did not have a contract carriers permit under A.R.S. § 40–608 either. It was held to be immaterial whether he had such a certificate. The Court said:

> "Even if there had been sufficient consideration of the matter that we might

---

2. In fact, the truckers involved had previously held certificates as common carriers from the I.C.C., and contended they were "contract carriers" only because they could not continue in business unless they held Arizona certificates as "con-

tract carriers". Their customers, all oil companies, had ceased to ship interstate and now shipped only intrastate because of the construction of a new pipe with outlets within the state.

say from the record that petitioner is a contract carrier we cannot permit the commission to complain, hear and decide the matter under the section governing common carriers then sustain that judgment before this court under the section governing contract carriers. The judgments to be made under those two sections are fundamentally different in their nature. The judgment under A.R.S. § 40–607, subd. C governing common carriers is basically one of regulated monopoly while the judgment which the commission must make under A.R.S. § 40–608, subd. C governing contract carriers is basically a judgment concerning the effect of this use on highway maintenance and safety." 89 Ariz. at 285, 361 P.2d at 544.

The above applies here. The commission cannot complain, in this action, of the fact that appellant does not have a contract carrier's permit under A.R.S. § 40–608.

Appellant's industry is a clear example of the type of industry to which all manner of health regulations might be applied. But this Court has already warned against the fallacy that because health regulations may, and should be adopted in certain businesses, the state is not thereby free to adopt economic regulations. Edwards v. State Board of Barber Examiners, 72 Ariz. 108, 231 P. 2d 450 (price fixing for barbers); State v. Borah, supra, (medical regulation amounting to monopoly); State v. Childs, 32 Ariz. 222, 257 P. 366, 54 A.L.R. 736; and Stewart v. Robertson, 45 Ariz. 143, 40 P.2d 979 (monopoly provisions for benefit of registered pharmacists). In all of these cases the decisions were based upon both the Fourteenth Amendment to Federal Constitution and Sec. 4 of Art. II of the Arizona Constitution. Both are applicable here. Indeed the instant case is more flagrant, since the cases cited involved only class monopolies, whereas here the monopoly attempted to be granted by the state to appellant's competitors is an individual monopoly.

The state cites cases from other jurisdictions for the proposition that trash carriers are public service corporations to whom a monopoly may be granted and a certificate of public convenience and necessity required. Most of these cases do not support this proposition.

Masgai v. Public Service Comm., 124 Pa. Super. 370, 188 A. 599 upheld a cease and desist order against a trucker whose certificate of convenience and necessity had been revoked. Masgai argued that trash (not covered or proposed to be covered by any of his certificates but which could have been carried in his dump trucks) was not "property" covered by the common carrier section of the Pennsylvania Public Service Company Law. Directly contrary to the conclusion reached herein, the Pennsylvania court held that the trash was "property".

Fairchild v. United Service Corp., 52 N.M. 289, 197 P.2d 875 was a truck accident

case. Under New Mexico law, if the garbage truck involved was operated by a "common carrier" the wrongful death action should be brought by the surviving wife. If it was operated by a "contract carrier" the action was properly brought by the personal representative. The court held that as a garbage and trash collector, the defendant was not a "common carrier" as that term is defined in Sec. 68–1302, N.M. Sts. 1941, where the phrase "or any class or classes of property" is used. The court said:

> "Garbage collected to be removed and thrown away insofar as the owner is concerned, is not goods or personal property in the sense used in the definition of 'common carrier.' It must be carried for a consignor to a consignee as goods or something of value.

> "Whether * * * we had reference to our statutory, or the common law definition of 'common carrier' it is immaterial. The appellee is not a common carrier in either sense. He was merely a contract carrier as held by the Washington court." 52 N.M. 302–303, 197 P.2d 883.

The Washington cases referred to are discussed below. The New Mexico court noted Masgai, supra, but did not follow it. Fairchild re-enforces the conclusion that trash is not "other property" as that phrase is used in the Ariz.Const. Art. 15, Sec. 10.

State v. Diamond Tank Transport, 2 Wash.2d 13, 97 P.2d 145 was a criminal action in which the defendant was charged with "operating a garbage truck as a contract carrier in the city of Seattle, without first having obtained a permit from the State Department of Public Service". Defendant held a contract with the City of Seattle "to collect and dispose of all garbage in the city." Following Masgai the court said that at least some of the trash hauled was property, and held:

> "The respondent was a contract carrier, and, without a permit from the department of public service, was operating illegally." 2 Wash.2d at 16, 97 P. 2d at 147.

There is no suggestion that respondent might have been a "common carrier" or that the type of permit required was an exclusive one which he could not obtain. The permit required was similar to the one required by A.R.S. § 40–608.

In City Sanitary Service v. Rausch, 10 Wash.2d 446, 117 P.2d 225 the plaintiff, who had an exclusive contract with a city "to collect garbage", secured an injunction against a competitor who held no contract with the city. The plaintiff held no permit at all from the state, and none was required in his circumstances. The validity of an exclusive contract with a city in the trash collection field was upheld in this case. The court said:

"In the case of Smith v. Spokane, 55 Wash. 219, 104 P. 249, 250, 19 Ann. Cas. 1220, it was held that a garbage ordinance was a valid exercise of that power [police power], even though, in pursuance thereof, the contract was let to an individual to collect and dispose of garbage. It was pointed out in the opinion in that case that such ordinances were almost universally sustained, as follows:

" '* * * But that the removal and destruction of the noxious, unwholesome substances mentioned in these ordinances tends directly to promote the public health, comfort, and welfare would seem to be beyond question. If so an ordinance which tends to accomplish these results is a proper exercise of the police power, and from this power is necessarily implied the duty to determine the means and agencies best adapted to the end in view. That that object can best be attained by entrusting the work in hand to some responsible agency under the control of the city, possessing the facilities for carrying it on with dispatch, and with the least possible inconvenience, must be apparent to all. Ordinances conferring the exclusive right to collect garbage and refuse substances upon some department of the city government, or upon a contractor with the city, have almost universally been sustained.' " (citing cases) 10 Wash.2d 448–449, 117 P.2d 226.

What we hold here is that in attempting to grant a monopoly of the private business of trash collection to appellant's competitors, the Corporation Commission has assumed a power which is neither granted by the statute nor authorized by the Arizona Constitution and the exercise of which is forbidden by both the Arizona and Federal Constitutions. Every business in the state is subject to public control in some respects. This does not mean that because "regulated monopoly" has been accepted as a method of regulating public service corporations that the state, either administratively or legislatively, can, without reason, grant monopolies in all businesses.

It might be said that since State v. Smith, supra, adopted Frost as a rule for the construction of the Arizona Motor Carrier statutes, that what was intended was the rule of the Frost case as it was understood in 1926. It is not necessary to be so restrictive. The Frost case has never been reversed. It should be interpreted, like any other case, in the light of decisions and events since it was decided. But this Court is not at liberty to disregard it, and has no desire to do so.

The decree appealed from is reversed with directions to dismiss the complaint. Since the injunction of May 31, 1962, was without authority in law, the order of No-

vember 13, 1962, adjudging defendants in contempt of court is hereby vacated.

BERNSTEIN, C. J., and STRUCK-MEYER, JENNINGS, and LOCKWOOD, JJ., concur.

NOTE: Justice JESSE A. UDALL having disqualified himself, the Honorable WILLIAM W. NABOURS, Judge of the Superior Court of Yuma County, Arizona, was called to sit in his stead and participate in the determination of this appeal.