MOORE INDUSTRIAL DISPOSAL, INC., Appellant,

v.

CITY OF GARLAND, Appellee.

No. 19828.

Court of Civil Appeals of Texas, Dallas.

July 11, 1979.

Rehearing Denied Aug. 28, 1979.

Marshal W. Dooley, Herndon, Girand & Dooley, Dallas, for appellant.

Merril E. Nunn, Asst. City Atty., Garland, for appellee.

James W. Hightower, Hightower, Alexander & Cook, Dallas, for intervenor.

Before GUITTARD, C. J., and CARVER and HUMPHREYS, JJ.

HUMPHREYS, Justice.

Moore Industrial Disposal, Inc., appellant, sought to permanently enjoin the City of Garland, appellee, from accepting bids for transportation of sludge from any motor carrier not certified by the Railroad Commission of Texas. The sludge is hauled from the city's wastewater treatment facility to a landfill area. The bids under consideration by the city included one by Texas Industrial Disposal, Inc., intervenor, which does not have a specialized motor carrier certificate from the Railroad Commission. A temporary injunction was entered by agreement, the case was submitted on stipulated facts, and the temporary injunction was dissolved and a permanent injunction was denied. We affirm and hold that the sludge to be hauled by these carriers is not property within the Texas Motor Carriers Act, Tex.Rev.Civ.Stat.Ann. art. 911b (Vernon 1964).

Appellant, who holds a specialized motor carrier certificate from the Railroad Commission, contends that a motor carrier hauling sludge must have a specialized motor carrier certificate. Its four points of error attack the trial court's conclusions that sludge is not property within the meaning of article 911b, that specialized motor carriers are not required to obtain certificates of convenience and necessity from the Railroad Commission, and that specialized motor carriers are included in the exemption from the definition of "motor carrier" in article 911b § 1(g)(4).

Article 911b § 1(g) defines "motor carriers" as "any . . . vehicle used in transporting *property* . . ." (Emphasis added). Therefore, the first question before us is whether sludge is property within the act. If it is not, a vehicle hauling sludge is not covered by the act and would not have to have a certificate of convenience and necessity from the Railroad Commission. Any exemptions under article 911b § 1(g)(4) would be immaterial.

The Motor Carriers Act does not define property. The subject matter of this case, however, sludge, does come within Tex.Rev.Civ.Stat.Ann. art. 4477–7 (Vernon 1976), the Solid Waste Disposal Act. That statute not only defines "solid waste" but also places the authority to regulate the collection, handling, storage and disposal of municipal solid waste with the Texas Department of Health. Section 2(5) defines solid waste as:

all putrescible and non-putrescible discarded or unwanted solid materials, including garbage, refuse, *sludge from a waste treatment plant* or air pollution control facility . . ., but does not include: (i) solid or dissolved material in domestic sewage, or solid or dissolved material in irrigation return flows, or industrial discharges *subject to regulation by permit issued pursuant to the Texas Water Quality Act*; . . . or (iii) waste materials which result from activities associated with the exploration, development, or production of oil or gas and are *subject to control by the Texas Railroad Commission.* . . . [Emphasis added.]

Sludge from a waste treatment plant is not excluded from the definition of solid waste.

The transportation of sludge to a land fill could be regulated by both the Solid Waste Disposal Act and the Motor Carriers Act. We determine, however, that sludge in this case is not property within the Motor Carriers Act because the owner abandons the waste and because it has no value. Indeed, here the parties stipulated, and the trial judge found that this "sludge has no commercial or economic value." Other jurisdictions have addressed the question and reached conflicting results.

In *Masgai v. Public Service Commission of Pennsylvania,* 124 Pa.Super. 370, 188 A. 599 (1936), one of the first cases on the subject, the court held that waste hauling was within its Motor Carrier Act. Masgai was hauling stone, gravel and other articles usually transported by dump truck without a certificate from the Public Service Commission. The court decided waste was property because the generator of waste has a property right in the possession and disposal of waste that continues until the waste is actually destroyed. The court also noted that these articles which were being hauled had some value.

In *Joray Trucking Corporation Common Carrier Application,* 99 M.C.C. 109, 16 Fed. Carr.Rep., ¶ 35,925 (1965), the Interstate Commerce Commission construed the meaning of "property" in the Federal Motor Carriers Act, 49 U.S.C.A. §§ 10521–10526 (Supp.1978). *Joray* involved a motor carrier hauling rock and debris obtained from excavations and demolishment of buildings. In contrast to *Masgai,* the Commission found that these items were not property within the meaning of the Federal Motor Carriers Act but based its holding partly on the finding that the contractor relinquishes ownership of these items at the time they are removed from the site. The Commission also stated "the debris, although it may ultimately serve a purpose in helping to fill wasteland, is not purchased from the contractors who desire its removal and to them it has a negative value as a commodity . . . ."

Another case ruling that waste is not property within that state's transportation statute is *Visco v. Arizona,* 95 Ariz. 154, 388 P.2d 155 (Ariz.1963). Visco was transporting garbage and refuse from commercial customers to local land fills. The court ruled waste was not property within the statute's definition of a "common carrier" and stated:

Nor is the trash hauled by appellant "other property," as that phrase is used in the constitution and in relation to carriers. Its character as "property" in this case was lost when the owner determined to throw it out. This trash is totally unlike all other property hauled by either common or private carriers. It has been abandoned. 388 P.2d at 163.

We hold that the hauling of this sludge in question is regulated by the Texas Department of Health and not by the Railroad Commission of Texas. We agree with the reasoning of *Joray* and *Visco* and hold that this sludge is not property within the meaning of the Texas Motor Carriers Act. Accordingly, we affirm the trial court's judgment denying an injunction against the city because Texas Industrial Disposal, Inc., or any vehicle hauling sludge, does not have to obtain a certificate of convenience and necessity from the Railroad Commission.

Affirmed.